A. C. LEIGHTON *vs.* JOHN HEAGERTY, Defendant, and DAVIS & O'BRIEN, Garnishees.

Sept. 5, 1874.

**Garnishee Examination—Admission of Evidence.**—Upon the examination of a garnishee, the statute (§§ 156, 162, ch. 66, Gen. Stat.) evidently contemplates the admissibility of evidence other than the testimony of the garnishee. Such evidence is receivable for the purpose of corroborating or explaining the testimony of the garnishee, or of developing facts additional to those disclosed by him.

**United States Voucher may be Garnished.**—A United States voucher, (property of a defendant,) which has been given to him for personal (but not official) services rendered by him to the United States, may be a proper subject of garnishment.

Davis & O'Brien having been summoned as garnishees of the defendant Heagerty, it appeared by their disclosure, on November 12, 1873, that in December, 1872, they were retained by him as attorneys to prosecute a claim against the quartermaster's department of the United States army. On

June 23, 1872, they received from that department a check for a portion of the claim, $218.35, and, for the balance, $444.12, a voucher in the following form:

"Form No. 13, Voucher to Abstract B.

"The United States to John Heagerty, Dr.

| Place and Date. | | Dolls. Cts. |
|---|---|---|
| Fort Buford, D. T. Nov. 1, 1872. | For services rendered the Quartermaster's Dep't at Fort Buford, D. T., as engineer, from July 1, 1872, to October 31, 1872, inclusive. Four months and thirteen and one-fourth (13 1-4) days @ $100 per month, including 14 1-4 days extra time for time made in excess of eight hours per day. | |
| | | $444.12 |

"I certify that the above account is correct and just, that the services were rendered as stated, that they were necessary for the public service, and are borne on my report of persons, etc., for the months of Sept. and October 1872, and in forms 1 of Lieut. C. G. Pennoy, A. A. Q. M., for July and August, 1872.

"A. P. BLUNT, Capt. & A. Q. M., U. S. A."

When retained by Heagerty, the garnishees received from him a power of attorney, and also the following order:

"St. Paul, Minn., Dec. 6, 1872. Pay to James Brooks all the moneys belonging to me, which may come into your hands on account of a power of attorney given by me to you at this date. "JOHN HEAGERTY.

"To Davis & O'Brien, St. Paul, Minn."

This order the garnishees handed to Brooks, telling him that, so long as the order was outstanding, they should pay money to no person except upon that order. About April 25, 1873, Heagerty directed them to pay Brooks $226, and no more, upon the order. On June 25, 1873, the order was presented to the garnishees by Guerin & Ferron, of

Minneapolis, endorsed to them by Brooks, and the garnishees thereupon paid them $183.35, being the amount of the check above mentioned, less $35, their charges. On July 8, 1873, the defendant sent the garnishees a draft for $42.67, which they paid over to Guerin & Ferron on account of the order, (making $226.02 thus paid them,) at the same time demanding the order, which G. & F. refused to surrender. In Heagerty's letter remitting the $42.67, he repeated his instructions to the garnishees to pay only $226 on the order to Brooks, and they accordingly refused to pay any more to Guerin & Ferron till they heard from Heagerty. Thereupon Guerin & Ferron employed an attorney, through whom they notified the garnishees that, as assigns of the order, they should hold them responsible for the balance coming to Heagerty. Afterwards, and on the same day, the garnishee summons in the present action was served. Following the disclosure of the garnishees, the attorney for Guerin & Ferron testified, under the garnishees' objection, that he was instructed by them to collect $139.65, the balance of their claim on the order, of which balance the sum of $42.67 was paid on July 8, leaving the sum of $96.98 that he was instructed to collect.

One Combs, being produced and sworn, on November 13, (the day following the garnishees' disclosure,) as a witness for the plaintiff, testified that he was plaintiff's agent, with full authority, etc., produced the order from Heagerty to Brooks, with the endorsements, together with a memorandum, reciting that, as such agent for plaintiff, he had received the order, etc. from the attorney for Guerin & Ferron, and containing an agreement that the plaintiff, by Combs his agent, shall surrender the order to the garnishees, provided by such surrender he secures the voucher in question; and that, on securing the voucher, he will use all due diligence to collect the same, and, upon collection, will pay Guerin & Ferron $96.98. This memorandum bore date November 13, 1873.

The witness further testified that he was ready to surren-

der the order to the garnishees, on receipt of the voucher.

T. C. Ferron, of the firm of Guerin & Ferron, testified that the amount remaining due them on the order was $96.98, and produced a letter from Brooks, requesting that the order be paid in full to Ferron. He also testified his assent to the surrender of the order, upon the receipt of the voucher by Combs from the garnishees.

The district court for Ramsey county, *Wilkin,* J., presiding, ordered that, upon the surrender of the order to the garnishees, they deliver the voucher in question to a receiver, etc., from which order the garnishees appeal.

*Davis & O'Brien,* for appellants.

*Charles E. Otis,* for respondent.

BERRY, J. We agree with the learned judge, from whose determination this appeal is taken, that "it is quite apparent from the testimony in this case, that, if Brooks and his assignees, Guerin and Ferron, have any interest, under the order given by Heagerty to Brooks, in the voucher which the plaintiff seeks to reach by this proceeding, it is only to the extent of $96.98; and that such was the condition of things at the time this garnishee summons was served. The plaintiff, then, has the right to have the balance of the voucher applied in payment of his judgment."

The testimony which was received for the purpose of showing that the order directing the payment of the proceeds of the voucher to Brooks, was not intended to pass the entire property in such proceeds, but only to pass the same so far as necessary to discharge certain indebtedness, and indemnify for certain liability, was competent. Upon the examination of a garnishee, the statute (§§ 156, 162, ch. 66, Gen. Stat.) evidently contemplates the admissibility of evidence other than the testimony of the garnishee. Such evidence is receivable for the purpose of corroborating or explaining the testimony of the garnishee, or of developing facts additional to those disclosed by him; and for this purpose it was received in this instance. The garnishees did not deny possession or control of defendant's "effects."

They disclosed certain facts which the plaintiff did not attempt to controvert directly or indirectly. If the garnishees had denied possession or control of any "effects" of the defendant, and the truth of their disclosure had been called in question by the plaintiff, the statute (§ 158, ch. 66, Gen. Stat.) points out a mode of procedure differing from that pursued in this case.

So far as Brooks is concerned, the evidence goes to show that he makes no claim against the garnishees on account of the voucher. If there was any doubt about this, he might have been made a party to this proceeding, so as to be bound thereby, under § 157, ch. 66, Gen. Stat. No attempt in this direction appears to have been made. But, irrespective of this, we agree with the court below that the garnishees will be sufficiently protected by the surrender of the order, out of the agreement to pay which their liability to Brooks arose.

We see no reason why the voucher was not a proper subject of garnishment. It was a "written evidence of indebtedness," and therefore "effects," within the provisions of §§ 147, 150 and 155, ch. 66, Gen. Stat. The counsel for the garnishees says that it was given for personal services rendered the United States government. This is certainly of no importance, so long, at least, as it does not appear to have been given for official services. He further says that it is a fund in the hands of the United States government. This also is of no importance. This is not a suit against the government, and the order made below simply appoints a receiver to "collect, receive and receipt for" the money due on the voucher, under and pursuant to the terms of the same. It is not a direction to bring suit against the United States government.

Order affirmed.