MATHIAS PITZL v. GEORGE WINTER.[1]

December 22, 1905.

Nos. 14,613—(121).

**Garnishment—Evidence.**

Upon garnishee disclosure, the executor of an estate may introduce testimony and evidence other than his own, for the purpose of corroboration and explanation by developing facts additional to those disclosed by him, and for the purpose of showing that money and effects under his control as executor do not in fact belong to the judgment debtor.

**Conversations with Decedent.**

Section 5660, G. S. 1894, was not enacted for the sole benefit of representatives of decedents, and in such garnishment disclosure proceedings the judgment debtor is a party interested and is prohibited from testifying on behalf of the executor for the benefit of the estate concerning conversations had by the judgment debtor with the testator as to the application of the devise to extinguish a debt due the estate in case of the testator's decease prior to its payment.

Plaintiff having recovered a judgment against defendant in the district court for Stearns county instituted garnishment proceedings there-

[1] Reported in 105 N. W. 673.

in against Peter J. Winter, individually and as executor of the will of John Winter, deceased. From an order, Searle, J., granting a motion to discharge the garnishee, upon the coming in of the report of the referee appointed to take the disclosure, plaintiff appealed. Reversed.

*Bruener & Klasen,* for appellant.

*J. D. Sullivan,* for respondent.

LEWIS, J.

The plaintiff, Mathias Pitzl, held a judgment, entered September 28, 1895, for $769.07 against defendant George Winter. In May, 1904, defendant's father, John Winter, died, having left a last will and testament, disposing of property appraised at $11,717, of which amount $400 was specifically bequeathed to defendant George Winter, and a one-ninth interest in the balance of the estate was bequeathed to him as residuary legatee. Peter J. Winter, a brother of George, was appointed executor of the will and the time limited for the filing of claims expired October 1, 1904. October 28 the executor was garnished by plaintiff as judgment creditor, and disclosure took place on November 30. In the meantime, the executor consenting, on November 30 a $200 note, signed by Anna M. Winter, wife of George Winter, and by John Winter, deceased, was filed in the probate court against the estate, and on November 9 another note for $500, signed by the same parties, was also filed. At the disclosure it was shown by the garnishee what the value of the estate was, and that defendant George Winter was entitled to receive therefrom $400, and as residuary legatee a one-ninth interest in whatever amount of the estate remained after paying the special bequests, the exact amount of which did not appear, but roughly estimated to be substantially equal to the amount of plaintiff's judgment against defendant Winter.

The garnishee, as a part of his disclosure, called his brother, defendant George Winter, as a witness, and attempted to show by him that it was verbally understood between himself and his father, John Winter, during his lifetime, that the $200 and $500 notes, above mentioned, which had been filed with the probate court, were in fact executed by John Winter for the accommodation of defendant, and that it was verbally agreed between them that, if George did not pay the notes and they were paid by the father, then the amount thereof should be offset

against such interest as George Winter might have in the father's estate. This evidence was objected to upon two grounds: That the statute with reference to garnishment did not permit testimony of any witness in addition to the garnishee himself, upon the theory that a garnishment proceeding is not an action at law to try questions of fact, but a mere disclosure, confined to the testimony of the garnishee; and upon the further ground that the testimony was incompetent and prohibited by the statute (G. S. 1894, § 5660), it being testimony with reference to conversation with a deceased person by one interested in the result of the action.

1. A garnishee does not become charged with respect to the debtor's property in his hands at the time of the service of the garnishee summons until judgment is rendered against him upon his disclosure, pursuant to an order of the court. The garnishee summons confers no more than an inchoate lien. Langdon v. Thompson, 25 Minn. 509. The liability of the garnishee is determined from the evidence taken at the disclosure, and the statutes provide for pleadings and a trial where liability is denied, and, when fairly construed, intend that other testimony than that of the garnishee is receivable at the disclosure for the purpose of corroborating or explaining the testimony of the garnishee, or of developing facts additional to those disclosed by him. Section 5323, G. S. 1894; Leighton v. Heagerty, 21 Minn. 42. The executor was authorized to call upon other witnesses, or evidence, to explain and to prove that, while it appeared that he might have under his control certain moneys belonging to defendant George Winter, yet in fact the estate did not owe him anything. If the disclosure amounted to a denial on the part of the executor that there was any money or effects in his possession or control belonging to defendant, and the plaintiff did not believe the garnishee had made a true disclosure, he was at liberty to proceed under the provisions of section 5319, G. S. 1894, for permission to file a supplemental complaint and have a trial to test the facts.

2. "Interested in the event thereof," as used in section 5660, means a direct and immediate pecuniary interest adverse to that of the party against whom his testimony was offered. Bowers v. Schuler, 54 Minn. 99, 55 N. W. 817; Lowe v. Lowe, 83 Minn. 206, 86 N. W. 11. It is evident that George Winter was interested in the issue between the parties, although not a party to the garnishee proceedings. Manahan v. Hal-

loran, 66 Minn. 483, 69 N. W. 619.  In the latter case, however, the action was brought by the executor, and the interested witness who testified to the conversation with the deceased was called by the opposite party, and hence the identical question presented in the case before us was not decided.  The suggestion is made that the statute was enacted only for the benefit of the estate of the deceased party, and cannot be invoked by other parties in cases like this, where the representative of the estate relies upon such conversations.  And it is further claimed that, such being the purpose of the statute, the representative of the estate may waive its benefits.  In support of this proposition we are cited to certain decisions of this court.  That line of cases is simply to the effect that if, in the examination of a witness, the party who might have taken advantage of the statute and objected to the conversation did not do so, he could not thereafter claim the benefit of the statute.

We have not been able to find any authorities from other states having a similar statute which support the rule contended for.  The statute has always been strictly construed by this court, upon the theory that its main object was to prevent possible fraud when one of the parties had been removed by death.  Its terms are broad, and contained nothing to restrict their application, and in view of the evolution of the subject evidenced by the growth of the statute from preceding enactments (Chadwick v. Cornish, 26 Minn. 28, 1 N. W. 55) the intention was manifest to make no distinction in favor of the estates of deceased parties.  Although George Winter testified to the effect that his father had signed the $500 note as a surety, yet it is not permissible to assume that he was testifying to a fact when giving an account of the arrangement with his father:

> Q. Did you make any promises at that time to your father, John Winter, about this note, as to whether it should be paid or otherwise?  A. Yes; I did.  I promised him that, if I could not pay it, it was to be taken out of my share of the estate.

The same question and answer were given with reference to the $200 note.  The suggestion that this amounted to no more than a statement of fact, and did not necessarily refer to a conversation, is covered by Madson v. Madson, 69 Minn. 37, 71 N. W. 824, where it was held not permissible to state, in the form of conclusions of fact, the result of a

conversation, for the reason that it would be indirectly a statement of what the parties said.

It was error to receive the testimony of George Winter, and the order appealed from is accordingly reversed.

START, C. J., (dissenting).

I dissent. Section 5660, G. S. 1894, is an exception to the general rule as to the competency of witnesses and must be strictly construed. It should not be extended to cases not within its letter and spirit. Chadwick v. Cornish, 26 Minn. 28, 30, 1 N. W. 55; Livingston v. Ives, 35 Minn. 55, 27 N. W. 74; Parker v. Maxwell, 51 Minn. 523, 53 N. W. 754; 1 Wigmore, Ev. § 578. The object of the statute is to protect the estates of deceased persons. Therefore the calling of a party as a witness by an executor to establish a claim against such party in favor of the estate he represents is not within the spirit of the statute; hence it is an implied exception thereto. 30 Am. & Eng. Enc. (2d Ed.) 1060; State v. Barge, 82 Minn. 256, 84 N. W. 911; White v. Thomas, 91 Minn. 398, 395, 98 N. W. 101. If the rule laid down in the majority opinion is adhered to, it will result in many cases in a grave miscarriage of justice. Thus, an executor may be satisfied that a party owes the estate he represents a large sum of money; but the evidence to prove the demand is a conversation between the debtor and the deceased. The executor brings his action and calls the debtor for cross-examination to prove his case; but the debtor may, according to the decisions of this court, object to testifying to conversations with a deceased party by virtue of the statute, remain silent, and cheat the estate out of its just demand. Can it be possible that the statute was intended to and does invite and justify such rascality? Was not the statute intended as a shield for the protection of the estates of deceased persons, and not as a sword to strike them down?

But, this aside, I am of the opinion that the evidence which was received without objection in this case was ample to sustain the order of the trial court. The executor, the garnishee, claimed that the estate he represented had an offset to the legacy left to the defendant in the principal action, which was based upon the alleged fact that the deceased had signed notes as his surety which had been filed as a claim against the estate of the deceased. To sustain his claim the executor called as a witness the defendant, who testified without objection to the ultimate

facts that the deceased executed the notes as his surety at his request, and that the proceeds of the notes went to pay his debts. The law implies from these facts a promise on the part of the defendant to indemnify his surety or his estate. 27 Am. & Eng. Enc. (2d Ed.) 468. It was, therefore, not necessary to show an express promise to do so. The admission of incompetent evidence to prove a fact which the law implies in the absence of any evidence is not reversible error. Horton v. Williams, 21 Minn. 187. It follows that the testimony of the defendant to the effect that he promised the deceased that if he (the defendant) could not pay the notes the amount thereof should be taken out of his share of the estate of the deceased was simply surplusage. Whether competent or not, its admission was not prejudicial error. The law would in such a case reimburse the estate out of any available funds belonging to the defendant, whether he so expressly promised or not. Such a promise would be as unnecessary as the promise of a debtor that if he did not pay his note the amount thereof might be collected out of his property. It would seem in any view of this case that the decision of the trial court was right.