PAUL OLSON and Others v. THE COURT OF HONOR.[1]

February 1, 1907.

Nos. 14,955—(133).

**Beneficial Association—By-Law.**

A by-law of the defendant at the time it issued its benefit certificate here in question provided, in effect, that it would not pay the benefit of a member who committed suicide, whether sane or insane, unless he was at the time under treatment for insanity. The right to change its by-laws was reserved by the defendant. After the certificate was issued and before the death of the member the defendant amended the by-law, so as to limit the benefit in case of suicide to five per cent. of the face of the certificate for each year the member "shall have been continuously a member of the society." *Held*, that the general consent and agreement of a member of a mutual fraternal benefit society in his application and certificate to be bound by any changes in the constitution, by-laws, and rules of the society that it may enact in the future are subject to the implied condition that they must be reasonable, and that the change in the defendant's by-law in this case was unreasonable and void as to then existing members.

**Privileged Communication—Physician.**

Section 5662, subd. 4, G. S. 1894, relating to the testimony of a physician without the consent of his patient, is for the protection of the patient, and he may waive it, and as a general rule those who represent him after his death may also waive the privilege for the protection of interests which they claim under him.

Action in the district court for Meeker county to recover $1,000 upon a certificate issued by the defendant. · The case was tried before Powers, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*William B. Risse* and *Chas. G. Laybourn*, for appellant.
*E. P. Peterson* and *Foster & Stites*, for respondents.

[1]Reported in 110 N. W. 374.

STARL. C. J.

On October 3, 1901, the defendant, a mutual fraternal benefit association, issued its certificate of membership to Lena Olson, wife of the plaintiff herein and the mother of the other plaintiffs. This certificate provided for the payment from the benefit fund of the association, at the death of Mrs. Olson, of $1,000 to her husband and children. In and by the certificate it was expressly agreed that the application for membership, the medical examination, the constitution, laws, and rules of the association, and the certificate should constitute the complete and only contract between the parties, and, further, that the member should strictly comply with the constitution, laws, and rules then in force or thereafter to be enacted or adopted. When the certificate was delivered to and accepted by Mrs. Olson, a by-law of the association then in force provided that:

> This order will not pay the benefits of members who commit suicide, whether sane or insane, except it be committed in delirium resulting from illness, or while the member is under treatment for insanity, or has been judicially declared to be insane; but, in all cases not within said exceptions the amount of money contributed to the benefit fund by such members shall be returned and shall be paid to the beneficiaries out of said fund in lieu of the benefit.

The application for membership contained this provision:

> I further understand and agree that the laws of the order now in force, or hereafter enacted, enter into and become a part of every contract of indemnity by and between the members of the order and govern all rights thereunder.

In place of the original by-law the association, on July 1, 1903, adopted the following:

> If a benefit member commits suicide, whether sane or insane, voluntary or involuntary, there shall be payable to the beneficiaries entitled thereto five (5) per cent. of the face of the certificate for each year he shall have been continuously a member of the society, and after twenty (20) years of continuous membership the certificate shall be payable in full.

Mrs. Olson died May 21, 1904. The benefit was not paid, and this action was brought to recover the amount thereof. The defense was that she committed suicide and that the last by-law adopted ruled the case. The trial court held that the by-law in force when the certificate was issued governed the case, and instructed the jury that the plaintiffs were entitled to recover the full amount, unless Mrs. Olson committed suicide; but, if she did, then the defendant was entitled to a verdict, unless the jury further found that she was at the time under treatment for insanity. The jury returned a general verdict for the plaintiffs for the full amount claimed. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

1. The first question is whether the by-law which was in force when the certificate was issued or the one in force at the time of Mrs. Olson's death is to be taken as the basis for determining the rights of the parties. The certificate, in connection with the by-law in force at its date, in legal effect insured the member against death by suicide while under treatment for insanity; that is, in case of death caused by unintentional self-destruction by the insured while under treatment for insanity, the beneficiary was entitled to receive the full face of the certificate, but under the new by-law, in case of the death of the insured from such cause, the right of the beneficiary to recover was limited "to five (5) per cent. of the face of the certificate for each year [the insured] shall have been continuously a member of the society." Was this change authorized by the provisions of the contract providing for a change in the by-laws?

It is the contention of the defendant that it was by virtue of the provisions of the original contract that the society might change its by-laws and that the members should be bound thereby. It is obvious that such a provision must receive a reasonable construction. It would be unreasonable to construe it as giving the society plenary power to change its by-laws in any manner it might elect; for, if such construction were to obtain, then the original contract would be simply one to the effect that the society would pay the beneficiary, in case of the death of the member, in accordance with the terms of the contract or in accordance with such new, other, or further contract as it might elect thereafter to make for the parties. It seems clear that when the

member—that is, the insured—gives in advance his general consent to a change in the by-laws, and agrees in his certificate to abide by all the laws thereafter enacted by the society, he does not intend thereby that the society shall have the power to impair in essential particulars the contract for the payment of a specific sum to his beneficiary which it agrees by its certificate to pay; or, in other words, he does not consent that the society may make, without consulting him, a new contract·for both parties. It has accordingly been held by this court, in accordance with the weight of judicial authority, that the general consent and agreement of a member of a mutual fraternal benefit society in his application and certificate to be bound by any future changes in the constitution, by-laws, and rules of the society that it may enact in the future are subject to the implied condition that they must be reasonable. Thibert v. Supreme Lodge, 78 Minn. 448, 81 N. W. 220, 47 L. R. A. 136, 79 Am. St. 412; Tebo v. Supreme Council, 89 Minn. 3, 93 N. W. 513.

2. This brings us to the pivotal question: Was the change in the by-law in this particular case reasonable? In the first case cited the insured, at the time he became a member of the order, was entitled to written notice of the number and amount of his assessments. The by-law providing for such notice was, without his knowledge or consent, thereafter amended so as to require the payment of the assessment without such notice, and, if not paid within the time limited, the defaulting member should stand suspended. In the other case the member, at the time he became such, had the right to engage in the occupation of freight brakeman; but by an amendment to the by-laws of the society, without his knowledge or consent, this right was taken from him. It was held in each case that the amendment to the by-laws was unreasonable and void as to the insured.

The precise question in this case is whether the change in the by-laws of the society was reasonable whereby it attempted to relieve itself from liability to pay the stipulated benefit when the death of the member resulted from suicide while under treatment for insanity which it contracted for by its certificate and original by-laws. There are a number of cases which hold, in effect, that a mutual benefit society may legally make such a change in its by-laws, where a general power to change its by-laws has been reserved. See Supreme Commandery

v. Ainsworth, 71 Ala. 436, 46 Am. 332, Hughes v. Wisconsin, 98 Wis. 292, 73 N. W. 1015, and Daughtry v. Knights of Pythias, 48 La. An. 1203, 20 South. 712, 55 Am. St. 313. The change, however, in the by-laws in the case at bar, is quite as fundamental as the respective changes in the cases of Thibert v. Supreme Lodge, supra, and Tebo v. Supreme Council, supra; and, unless we overrule those cases, we must hold that the change in the by-law in this case was also unreasonable.

In determining whether the new by-law was unreasonable or not the question is not, as counsel for defendant seems to assume, whether there could be any change in the by-laws in respect to the right to commit suicide, or in the effect thereof upon the certificate. The simple question is whether the defendant, having agreed with a member to pay his beneficiary a stated sum of money in the event that his death should ensue from any cause, except certain specified causes or diseases, may change the contract by amending its by-laws so as to add to the excepted causes. If it may lawfully do so as to one cause or disease, it may as to several, and the rights of the member and his beneficiary are at the mercy of the society; for by repeated amendments of its by-laws it may exempt from the operation of the certificate so many causes or diseases as to make it practically worthless.

In this connection the case of Weber v. Supreme Tent, 172 N. Y. 490, 65 N. E. 258, 92 Am. St. 753, is an interesting one. It was held in that case that a mutual benefit society, which had insured a member against unintentional self-destruction after one year, could not by a subsequent amendment of its by-laws extend the time limit to five years. It does not appear from the report of the case whether or not the order had reserved the right to change its by-laws; but the question in that case, as here, was as to the reasonableness of the change, and it was held that the amendment was unreasonable and ineffectual to change the rights of a member. Mr. Chief Justice Parker, speaking for the court, said: "Unintentional self-destruction, whether due to insanity or accidental, after the lapse of a year from the making of the contract, was as much insured against as death from typhoid fever or consumption, and an amendment to its by-laws, providing that the death of an existing member from any of these causes should render the policy void, would deprive the party of vested contract rights. An amendment which produced such a result, we have recently held, may not be

made, because it is an unreasonable amendment, destroying contract rights, instead of regulating the administration of the corporation and its membership within reasonable bounds." Parish v. New York, 169 N. Y. 34, 61 N. E. 977, 56 L. R. A. 149; Weber v. Supreme Tent, 172 N. Y. 490, 65 N. E. 258, 92 Am. St. 753; Beach v. Supreme Tent, 177 N. Y. 100, 69 N. E. 281; Gaut v. American Legion, 107 Tenn. 603, 64 S. W. 1070, 55 L. R. A. 465; Morton v. Supreme Council, 100 Mo. App. 76, 73 S. W. 259.

In the last case cited the certificate bound the insured to comply with all the laws and usages of the society then in force or which might thereafter be enacted. A by-law then in force provided that, if any member committed suicide within two years, the order should be liable for only one-half of the face of the certificate. Thereafter the by-law was amended by providing that, if any member should die by suicide at any time, his beneficiary should receive only one-half of the face of the certificate. It was held that such member was not bound by the amendment. Upon principle and the decisions of our own court we hold that the change in the by-law in question was an unreasonable one, and void.

3. The burden of establishing that Mrs. Olson committed suicide was upon the defendant, and on the plaintiff to show that, if she did, she was then under treatment for insanity. Both issues were properly submitted to the jury. But, inasmuch as there was only a general verdict for the plaintiff, there is no way of ascertaining whether the jury based their verdict on a finding that Mrs. Olson did not commit suicide or on a finding that she did so while she was under treatment for insanity. It follows that, unless there was competent evidence to sustain a finding by the jury that she was under treatment for insanity at the time of her death, the verdict cannot be sustained; for there was evidence sufficient to sustain a finding that she committed suicide. The presumption and evidence as to suicide would support a finding either way on this issue. Peterson v. Railway Co., 36 Minn. 399, 31 N. W. 515.

There was sufficient evidence, if competent, to sustain a finding by the jury that she was under treatment for insanity at the time of her death. Her attending physician was called as a witness and testified to that effect. But the evidence was received over the objection of the

defendant that the testimony of the physician was prohibited by G.
S. 1894, § 5662, subd. 4, which provides that:

> A regular physician or surgeon cannot, without the consent
> of his patient, be examined, in a civil action, as to any informa-
> tion acquired in attending the patient which was necessary to
> enable him to prescribe or act for the patient. See R. L. 1905, §
> 4660, subd. 4.

If this objection was well taken, the evidence was not competent. It
is manifest that the purpose of the statute is to protect the patient, and
not his adversary; for the evidence may be received with the consent
of the patient.

Does this privilege become absolute on the death of the patient, or
may those who represent him or claim an interest under him after
death waive the privilege for the protection of such interest? This is
an important question; for if they cannot waive the privilege given
by the statute, and their adversary may invoke it to suppress the truth
and defeat the enforcement of rights the deceased provided for them
in his lifetime, then the statute may be made an instrument for cheating
justice. If such be the proper construction of the statute, then, if an
executor or legatee presents a will for probate, which is contested on
the ground that the testator was of unsound mind when the will was
made, the executor or legatee may not, if the contestant objects, call
the physician who was attending the testator at the time to testify as
to his knowledge of the patient's mental condition, acquired in at-
tending him. Nor could the personal representatives of a party, in an
action to recover damages on account of the death of his intestate by
the alleged negligence of the defendant, call the physician who attend-
ed the intestate after his injury to testify as to the nature of the inju-
ries and the cause of death, if such information was acquired in at-
tending him.

Again, the case under consideration illustrates the unreasonableness
of such a construction. The defendant insured the deceased for the
benefit of her husband and children against death by unintentional self-
destruction while under treatment for insanity. The best, and perhaps
the only, evidence to prove that the deceased was under treatment for
insanity at the time of her death is the testimony of the physician. Yet,

if the statute is to be construed as the defendant claims, then the plaintiffs, who are asserting a right under the deceased which she provided for them in her lifetime, may not waive the privilege; but the defendant may invoke it to defeat the enforcement of their right. It cannot be that such is the proper construction of the statute, for it is unreasonable and unjust.

The adjudged cases, however, relevant to this question, are not in entire harmony, due, perhaps, to a difference in the wording of the several statutes construed. This court in the case of Pitzl v. Winter, 96 Minn. 499, 503, 105 N. W. 673, held that G. S. 1894, § 5660, relating to a conversation between an interested party and a deceased person, was not enacted for the sole benefit of the representatives of decedents, and that they could not waive it. The language of the statute construed in that case differs so essentially from the statute here under consideration that the decision is not in point. Upon principle and what seems to be the weight of judicial authority, we hold that the statute in question is for the protection of the patient, and he may waive the privilege if he sees fit, and that, as a general rule, those who represent him after his death may also waive the privilege, for the protection of interests which they claim under him. In re Layman's Will, 40 Minn. 371, 42 N. W. 69; Winters v. Winters, 102 Iowa, 53, 71 N. W. 184, 63 Am. & Eng. Enc. (2d Ed.) 90; Denning v. Butcher, 91 Iowa, 425, 59 N. W. 69; Winters v. Winters, 102 Iowa, 53, 71 N. W. 184, 63 Am. St. 428; Grand Rapids v. Martin, 41 Mich. 667, 3 N. W. 173; Scripps v. Foster, 41 Mich. 742, 3 N. W. 216; Fraser v. Jennison, 42 Mich. 207, 3 N. W. 882; Groll v. Tower, 85 Mo. 249, 55 Am. 358.

It follows that the evidence of the physician in this case was competent, and that the verdict, no matter on which issue it was based, is sustained by the evidence.

4. The defendant assigns a number of other alleged errors of the court in its rulings on the admission of evidence. We have considered each of them, and find no reversible errors in such rulings.

Order affirmed.