Tomás Bernardini de la Huerta, Plaintiff and Appellant, *v.* Juan José Peña, Defendant and Appellee.

No. 6092.   Argued March 16, 1934.—Decided March 23, 1934.

*Tomás Bernardini de la Huerta, in pro. per.,* for appellant.  *F. Colón* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Bernardini brought an action against Peña for the recovery of an amount due for professional services rendered in a certiorari proceeding wherein the Municipal Assembly of Santa Isabel had been the respondent. The district court issued a writ of garnishment whereby the treasurer and au-

ditor of the municipality were required to place at the disposal of the court a certain amount set aside in the budget for the payment of certain costs and attorney's fees awarded Peña in the certiorari proceeding; or in the alternative to abstain from paying Peña. Later the district court, at the instance of Peña, quashed the writ of garnishment. Hence the present appeal, wherein appellant seeks to distinguish the instant case from the cases relied on by the district judge and by appellee. See *Lamboglia* v. *School Board of Guayama*, 15 P.R.R. 299; *Fernández* v. *Obén*, 26 P.R.R. 137; *Sobrinos de Ezquiaga* v. *Briganti*, 31 P.R.R. 816; *Crédito & Ahorro Ponceño* v. *Colón*, 36 P.R.R. 308, and *F. L. de Hostos & Co.* v. *Madera*, 43 P.R.R. 591.

Appellant points out that in all of these cases the funds in question were public funds while in the instant case the money set aside for payment of the amount due Peña had not been specifically appropriated for any public purpose. The only authority cited is 28 C. J. 128, par. 168, where in note number 51 (a), the case of *Leighton* v. *Heagerty*, 21 Minn. 42, is referred to as holding that: "A United States voucher, the property of defendant, which has been given to him for personal and not official services rendered by him to the United States, may be a proper subject of garnishment." The text to which the note is appended reads (italics ours): "Debts due to defendant from the government or its agencies are generally held exempt from garnishment, *at least until the government or its agency has lost control of it.*"

The facts in *Leighton* v. *Heagerty* (decided in 1874), were as follows:

"Davis & O'Brien having been summoned as garnishees of the defendant Heagerty, it appeared by their disclosure, on November 12, 1873, that in December, 1872, they were retained by him as attorneys to prosecute a claim against the quartermaster's department of the United States army. On June 23, 1872, they received from that department a check for a portion of the claim, $218.35, and, for the balance, $444.12, a voucher in the following form:

" 'Form No. 13, Voucher to Abstract B.

" 'The United States to John Heagerty, Dr.

| Place and Date | . | Dollars. Cts. |
|---|---|---|
| Fort Buford, D. T. Nov. 1, 1872. | For services rendered the Quartermaster's Dep't at Fort Buford, D. T., as engineer, from July 1, 1872, to October 31, 1872, inclusive. Four months and thirteen and one-fourth (13 ¼) days @ $100 per month, including 14¼ days extra time for time made in excess of eight hours per day. ...................................... | $444.12 |

" 'I certify that the above account is correct and just, that the services were rendered as stated, that they were necessary for the public service, and are borne on my report of persons, etc., for the months of Sept. and October 1872, and in form 1 of Lieut. C. G. Pennoy, A. A. Q. M., for July and August, 1872.

" 'A. P. Blunt, Capt. & A. Q. M., U.S.A.'

"When retained by Heagerty, the garnishees received from him a power of attorney, and also the following order:

" 'St. Paul, Minn., Dec. 6, 1872. Pay to James Brooks all the moneys belonging to me, which may come into your hands on account of a power of attorney given by me to you at this date.

" 'John Heagerty.

" 'To Davis & O'Brien, St. Paul, Minn.'

"This order the garnishees handed to Brooks, telling him that, so long as the order was outstanding, they should pay money to no person except upon that order. About April 25, 1873, Heagerty directed them to pay Brooks $226, and no more, upon the order. On June 25, 1873, the order was presented to the garnishees by Guerin & Ferron, of Minneapolis, endorsed to them by Brooks, and the garnishees thereupon paid them $183.35, being the amount of the check above mentioned, less $35, their charges. On July 8, 1873, the defendant sent the garnishees a draft for $42.67, which they paid over to Guerin & Ferron on account of the order, (making $226.02 thus paid them at the same time demanding the order, which G. & F. refused to surrender. In Heagerty's letter remitting the $42.67, he repeated his instructions to the garnishees to pay only $226 on the order to Brooks, and they accordingly refused to pay any more to Guerin & Ferron till they heard from Heagerty. Thereupon Guerin & Ferron employed an attorney, through whom they notified the garnishees that, as assigns of the order, they should hold them responsible for the balance coming to Heagerty. Afterwards, and on the

same day, the garnishee summons in the present action was served. Following the disclosure of the garnishees, the attorney for Guerin & Ferron testified, under the garnishees' objection, that he was instructed by them to collect $139.65, the balance of their claim on the order, of which balance the sum of $42.67 was paid on July 8, leaving the sum of $96.98 that he was instructed to collect.

"One Combs, being produced and sworn, on November 13, (the day following the garnishees' disclosure) as a witness for the plaintiff, testified that he was plaintiff's agent, with full authority, etc., produced the order from Heagerty to Brooks, with the endorsements, together with a memorandum, reciting that, as such agent for plaintiff, he had received the order, etc., from the attorney for Guerin & Ferron, and containing an agreement that the plaintiff, by Combs his agent, shall surrender the order to the garnishees, provided by such surrender he secures the voucher in question; and that, on securing the voucher, he will use all due diligence to collect the same, and, upon collection, will pay Guerin & Ferron $96.98. This memorandum bore date November 13, 1873.

"The witness further testified that he was ready to surrender the order to the garnishees, on receipt of the voucher.

"T. C. Ferron, of the firm of Guerin & Ferron, testified that the amount remaining due them on the order was $96.98, and produced a letter from Brooks, requesting that the order be paid in full to Ferron. He also testified his assent to the surrender of the order, upon the receipt of the voucher by Combs from the garnishees."

In that case the garnishees appealed from an order directing delivery of the voucher to a receiver upon surrender of the order to the said garnishees. If the municipality had issued to Peña a check, warrant, or voucher, if Bernardini had proceeded against Peña's agent and attorney in fact as garnishee, and if the district court had first ordered the agent and attorney in fact to deliver the said voucher or to deposit the proceeds thereof with the clerk of the court or to abstain from turning the proceeds over to Peña and had subsequently canceled such order upon the theory that municipal funds were not subject to garnishment, then the case of *Leighton* v. *Heagerty* would be in point.

In the absence of a stronger showing by appellant, we are not prepared to say that the mere fact of an appropriation

384

for the payment of costs and attorney's fees awarded in a certiorari proceeding, made the money so appropriated subject to garnishment.

The order appealed from must be affirmed.