Day, J.
 

 The question presented for our determination is whether it is competent for a widow, claiming the benefit extended to her by the Workmen’s Compensation Act of Ohio, to waive the protection of the privileged communications statute (Section 11494, General Code), and to permit her husband’s attending physician to testify concerning the former’s physical condition at different times during’ the course of treatment.
 

 Section 1465-91, General Code, provides that no compensation shall be paid a claimant on account of an occupational disease unless a medical advisor appointed by the Industrial Commission shall have examined
 
 *143
 
 him; and it further provides that the dependents of an employee claimed to have died from an occupational • disease shall receive no compensation unless such medical advisor has had opportunity to examine the body of the decedent.
 

 Section 1465-95, General Code, provides, in effect, that a claimant for compensation who refuses to submit to a medical examination when ordered by the Industrial Commission, or obstructs the same, shall not receive compensation.
 

 The pertinent portion of Section 11494, General Code, provides:
 

 “The following persons shall not testify in certain respects:
 

 ‘ ‘ 1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify [1] by express consent of the client or patient; [2] and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same Subject.”
 

 It is the contention of the Industrial Commission that the protection of the above quoted statute (Section 11494, General Code) can be waived only by the patient and that the right to so waive does not survive, but dies with the patient.
 

 Under all our law, why can not his dependents waive it after his death?
 

 The purpose of such a statute is to protect the patient, not the physician. These communications are sometimes but not always given in confidence, and but for such confidence, in many instances would not be' given at all. In many other instances confidence does not enter into the communication. These communications in ninety-nine cases out of a possible one hundred
 
 *144
 
 relate to physical condition. The patient can waive this privilege so long as he lives.
 

 The claimant cannot hide his physical condition and draw compensation. He must, so long as he lives, give the medical advisor of the Industrial Commission opportunity to examine him and learn all that his family physician could possibly know. If his dependents make claim for death because of occupational disease, they can pursue his body after death and examine it, before his dependents will be permitted to participate in the state insurance fund.
 

 These enactments have taken away the privilege he enjoyed under the general exclusion statute, but when he dies and his dependents offer his attending physician as a witness, the Industrial Commission objects on the ground that all he knows he obtained through the medium of privileged communications — this court having’ held that the exposure of the body or some part thereof for examination constituted a communication —and the objection is sustained. The claimant during life was obliged to expose part or all of his body to the medical advisors for the commission, and they could testify freely as to all they observed and as to any oral communication made by claimant to them. The dependents would have to expose his corpse after death, if they were claiming on account of an occupational disease.
 

 In the instant case the testimony of the attending physician was introduced for the purpose of proving the nature and extent of the personal injuries sustained by decedent, which, it is claimed, progressively became worse and resulted in his death. To entitle the widow to death benefits under the Workmen’s Compensation Act it is incumbent upon her to establish that her husband died from injuries sustained by him during the course of his employment. To do so, it is necessary that she introduce testimony concerning the nature and extent of the injuries sustained by
 
 *145
 
 her husband and to establish causal connection between these injuries and his death. To deprive her of the right to waive the privilege under Section 11494, General Code, is to deny her the means of enforcing the rights given to her by the Workmen’s Compensation Act.
 

 Section 11494, General Code, was intended to shield and protect the patient from disgrace and humiliation consequent upon a disclosure of the nature of his ailment. The reason for this rule of exclusion has, however, departed in industrial cases. Consequently, the dependents of the deceased claimant should be permitted to waive the privilege of the decedent through whom they claim. He can not be hurt. He is dead. It is a rule of necessity in these cases, and unless the rule is relaxed as to them, dependents are in a sorry plight indeed, as they have no other means whereby to prove the cause of death. It is inconceivable that the Legislature intended, on the one hand (Section 1465-82, General Code), to extend to the widow of an employee, whose injuries resulted in death, certain financial benefits, and on the other hand (Section 11494, General Code), to place her beyond reach of such benefits by the interposition of a technical rule of evidence.
 

 The privileged communications statute must be construed so as to afford rather than deny to the widow the legal means available for the enforcement of the rights accruing to her under the Workmen’s Compensation Act. Any other interpretation would be unworthy of an enlightened and progressive civilization. Giving the privileged communications statute a liberal rather than strict construction would help prevent denial of rights under the Workmen’s Compensation Act so clearly and unmistakably given to dependents of deceased employees. In doing so, we not only follow the clear dictate of the principles of substantial justice, but also give effect to sound public policy,
 
 *146
 
 upon which the Workmen’s Compensation Act was grounded.
 

 This question has received consideration by many jurisdictions in this country and the weight of authority supports the view that the right to waive the privilege survives- the patient.
 

 Thus — 5 Wigmore on Evidence (2d Ed.), 226, Section 2391 — “The
 
 personal representative
 
 of the deceased may waive the privilege. One who is entrusted with the management of the deceased’s property may surely be trusted to protect the memory and reputation of the deceased, in so far as it is liable to injury by the disclosure of his physical' condition when alive. It is incongruous to hold that the person who manages the litigation of the deceased’s property-interests has no power to waive rules of evidence for the purpose of advancing those interests. The power of an
 
 heir
 
 may also be conceded, if we remember that the heir, first, is at least equally interested in preserving the ancestor’s reputation, and, secondly, has an equal moral claim to protect the deceased’s property-rights from unwarranted diminution.
 
 * * *
 
 Except in two or three jurisdictions, it is usually agreed that the deceased’s representative (and probably also the heir) may waive the privilege.”
 

 In
 
 In re Thomas’ Estate,
 
 165 Wash., 42 at 51, 4 P. (2d), 837, it is stated: “ ‘while many text writers assert emphatically that the seal of secrecy remains forever, unless removed by the party himself, there is an abundance of authority for saying that, upon the deceáse of the only person who could, in his lifetime, exercise the privilege of waiver, the rule- should not be so perverted by a strict adherence to it as to render it inconsistent with its object, and thus bring it into direct conflict with the reason upon which it is founded.
 
 Russell
 
 v.
 
 Jackson,
 
 15 Jur., 1117;
 
 Blackburn
 
 v.
 
 Craw-fords,
 
 3 Wall. [U. S.] 175;
 
 Groll
 
 v.
 
 Tower,
 
 85 Mo. 249. The object of the rule, so far as it relates to this class
 
 *147
 
 of communications, being the protection of the estate, there remains no reason for continuing it when the very foundation upon which it proceeds is wanting.’ ”
 

 Again in
 
 In re Thomas’ Estate, supra,
 
 at page 54, it is stated:
 

 “ ‘It is a universal rule that the question of privilege, with respect to the communications offered in evidence, can be invoked only by the author of the communication. It is a personal privilege. The general principle upon which the right of privileged communication rests is too well established to require reiteration.
 

 “ ‘But in the case of persons deceased it is held that the right of waiver, when the character and reputation of the deceased are not involved, is lodged in the personal representative, that is, the executor or administrator of the estate, or the heirs of the deceased; and the ground upon which they are permitted to exercise the right of waiver is based upon the fact that they are all interested in the protection of the estate and upon the presumption that they would consent to the waiver of the privileged communication only for the purpose of securing that end.’ ”
 

 In
 
 United States National Life & Casualty Co.
 
 v.
 
 Heard,
 
 148 Okla., 274 at 275, 298 P., 619, the court said: “We think, by the weight of authority, the right to waive the privilege as to the evidence of a physician concerning information acquired in attending the patient survives the patient and may be exercised after her death by the beneficiary in the insurance policy of the deceased.”
 

 In
 
 Olson
 
 v.
 
 Court of Honor,
 
 100 Minn., 117, 110 N. W., 374, 117 Am. St. Rep., 676, 8 L. R. A. (N. S.), 521, the court said: “It is manifest that the purpose of the statute is to protect the patient, and not his adversary; for the evidence may be received with the consent of the patient.
 

 “Does this privilege become absolute on the death
 
 *148
 
 of the patient, or may those who represent him or claim an- interest under him after death waive the privilege for the protection of such interest? This is an important question; for if they cannot waive the privilege given by the statute, and their adversary may invoke it to suppress the truth and defeat the enforcement of rights the deceased provided for them in his lifetime, then the statute may be made an instrument for cheating justice.”
 

 In
 
 Masonic Mutual Benefit Association
 
 v.
 
 Beck,
 
 77 Ind., 203, at 209 and 210, 40 Am. Rep., 295, the court, 'discussing the same question, said: “* * * the statute ought to have, and was designed to have, a much broader scope. The relation of physician and patient, no matter what the supposed ailment, should be protected as strictly confidential, subject only to the right of the patient to waive the restriction; or, if the patient shall have died, then subject to the choice of the party who may be said to stand in the place of the deceased, and whose interests may be affected by the proposed disclosure.”
 

 To the same effect, see
 
 Penn. Mut. Life Ins. Co.
 
 v.
 
 Wiler,
 
 100 Ind., 92, 50 Am. Rep., 769.
 

 “The weight of authority is that the right to waive the physician-patient privilege is not limited to the patient himself, but after his death extends to those who may properly be regarded as standing in his place and representing him.” 27 Michigan Law Review, 345.
 

 “The weight of authority, under the statutes of most of the states, is that the right of waiver is not limited to the patient himself, but after his death extends to those who may properly be regarded as standing in his place or representing him. This has been true, even in the case of statutory provisions which make no mention of waiver, but are in terms of absolute prohibition of disclosure of information obtained by physicians in a professional capacity.” 31 A. L. R., 168.
 

 
 *149
 
 Numerous authorities supporting these views may be found in 31 A. L. R., 168. Only a few jurisdictions adhere to the view that the right of waiver dies with the patient.
 

 By virtue of the case of
 
 Swetland
 
 v.
 
 Miles
 
 (1920), 101 Ohio St., 501, 130 N. E., 22, Ohio is among the few jurisdictions denying the right to the representatives of a deceased client to waive the privilege, declaring the statutory enumeration of waivers to be exclusive. The writer of this opinion joins with Wigmore (5 Wig-more on Evidence [2d Ed.], Section 2329 note; Wig-more on Evidence, 1934 Supplement, Section 2329) in declaring this holding to be unsound and therefore not to be regarded as a precedent to be followed in support of the issue here raised. Whether the statute by its wording intended to restrict the right to waive the privileged communication exclusively to the author of such communication, living or dead (as the
 
 Swetland case
 
 holds), or to extend the right to the author of such communication only if living, is not as clear as was once thought. What did the Legislature mean when it said (Section 11494, G-eneral Code): “But the attorney or physician may testify [1] By express consent of the client or patient, [2] and if-the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject”? The wording “express consent of the client or patient” and “if the client or patient voluntarily testifies” implies that at the time the question of waiver is raised the author of the privileged communication is still living. The statute appears to be wholly silent, however, on the question of the- right to waive the privilege in the event of death, and if such right exists who may exercise it. The contingency of his death is nowhere in the statute suggested. The statute is not clear whether the right to waive is to die with the author of the privileged communication or is to survive his death and be
 
 *150
 
 transmitted to others. This lack of clarity calls for judicial inquiry and construction.
 

 The Workmen’s Compensation Act was enacted and the fund thereunder created for the benefit of injured employees and their dependents. The Industrial Commission was created as an agency for the fair and proper administration of that fund. It was not the intention of the Legislature in creating the State Insurance Fund, neither was it the public opinion, that it should become the source of much dispute. On the contrary, it was intended to give aid to injured employees and their dependents in moments of their greatest need. It is not the purpose or the function of the Industrial Commission to seek to preserve the fund by the suppression of truth. It is, however, its clear duty to fairly and impartially ascertain all the facts in the case and to pay or refuse to pay as the facts may warrant.
 

 A condition existed in Ohio prior to 1912 that was appalling. It was most apparent that in the industrial field injured employees and their dependents, when the injury resulted in death, were being unfairly treated. To remedy this evil, in 1912 the delegates to the Constitutional Convention wrote into our Constitution Sections 34 and 35 of Article II. Section 34 empowered the General Assembly to enact laws providing for the comfort, health, safety and general welfare of all employees. Section 35 provided in a general way for the creation of a State Insurance Fund by compelling employers to contribute thereto, and it further provided that such fund should be administered by the state.
 

 In 1923, original Section 35 was repealed and a new Section 35 was adopted, becoming effective on January 1, 1924. The new section was much more comprehensive than the old one and gave wide latitude to the General Assembly to enact laws to subserve the purposes of the creation of the State Insurance Fund.
 

 
 *151
 
 The interests of the Industrial Commission of Ohio and those of the claimants under the Workmen’s Compensation Act are mutual rather than antagonistic. The Industrial Commission of Ohio occupies the position of a trustee, as it were, of the fund for the benefit of injured employees and their dependents as beneficiaries of the fund.
 

 In the instant case the objection of the Industrial Commission to the waiver of the privileged communications statute by the widow is not based on the ground that the medical testimony would tend to disgrace the name and memory of the deceased employee, or that the injuries claimed to have been received by decedent were such as not to entitle the widow to share in the fund; but is based rather on the mere technical ground that under the privileged communications statute the patient alone has the right to waive its benefits.
 

 While measures have been adopted by the General Assembly to protect the fund from imposition, the tendency of the General Assembly and the courts has been to liberalize procedure and rules of evidence, to the end that injured employees and their dependents shall receive the compensation justly due them. In industrial cases, therefore, Section 11494, General Code, is to be given a liberal rather than a strict construction.
 

 Judicial legislation should never be indulged in, and to hold that Section 11494, General Code, does not apply to industrial cases is not judicial legislation in view of the fact that the General Assembly, by subsequent enactment, has taken away the very privilege that Section 11494, General Code, was originally enacted to preserve, and as a matter of law has repealed such section by implication, insofar as industrial cases are concerned.
 

 Section 11494, General Code, was originally Section 5241, Revised Statutes of Ohio, and was passed by the General Assembly in the year 1870 (67 Ohio Laws,
 
 *152
 
 113), in substantially its present form, except for changes which in no .wise affect the instant case.
 

 It is readily seen by a comparison of dates that the General Assembly of Ohio in the year 1870 did not and could not anticipate the creation of a State Insurance Fund in 1912, forty-two years thereafter.
 

 The cases of
 
 Ausdenmoore et al., Exrs.,
 
 v.
 
 Holzback,
 
 89 Ohio St., 381, 106 N. E., 41, and
 
 Industrial Commission
 
 v.
 
 Belay,
 
 127 Ohio St., 584, 190 N. E., 456, cited by the Industrial Commission, have no application to the issue here presented. In the cases cited the question presented was what constituted a “communication” within the meaning of the statute. In those cases there was a
 
 refusal
 
 to waive the privilege, while in the instant case the widow waives it.
 

 We hold that in an action by a widow seeking to share in the State Insurance Fund by reason of the death of her husband, an employee, resulting from injuries sustained by him while acting in the course of his employment, the testimony of a physician who attended him in his illness, resulting from such injuries, as to knowledge and information gained by him in his professional capacity, relating to decedent’s physical condition, may be admitted in evidence where the widow waives the statutory physician-patient privilege; and the objection of the Industrial Commission to the waiver of such privilege is properly overruled,
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams and Jones, JJ., concur.
 

 Matthias and Zimmerman, JJ., dissent.