# IN RE ESTATE OF JAMES P. CUNNINGHAM.
# NINA H. POGUE AND ANOTHER v. PETER FEGAN AND OTHERS.[1]

December 22, 1944.

No. 33,871.

[1]Reported in 17 N. W. (2d) 85.

A. J. *Rockne*, E. B. *Rockne*, and *Mohn & Watson*, for appellants.
*William W. Pye* and *Merle S. Olson*, for respondents.

MAGNEY, JUSTICE.

James P. Cunningham was the owner of about 600 acres of improved farm land in Goodhue county, which with his personal property inventoried at $28,096.70. He resided eight miles from Cannon Falls. His death at the age of 80 years occurred on May 16, 1942. He was the last of a family of two brothers and two sisters, who had inherited two farms from their parents. None of the brothers and sisters had married, and, as the others predeceased James, he ultimately, as the sole survivor, owned both farms. The day before his death he executed a will leaving all his property to a neighbor, Michael H. Crump.

James left surviving him 13 cousins, who claim to be his next of kin. They filed objections to the will. The probate court admitted the will to probate, and the cousins appealed to the district court. They based their objections chiefly on two grounds: (1) That at the time the will was executed James Cunningham was of unsound mind so as to be incompetent to make a will, and (2) that he was unduly influenced by others and especially by Michael H. Crump, the sole legatee named in the will. Contestants asked that these issues be submitted to a jury, and, in compliance with this request, the following interrogatories were so submitted:

"First—Was said James P. Cunningham of sufficient mental capacity to make a will on May 15, 1942?" to which the jury answered "Yes."

"Second—Was said will procured by and the result of undue influence exerted upon said decedent by Michael H. Crump and William W. Pye or either of them?" to which the jury answered "No."

The court reserved to itself the question raised as to the execution of the will. Before it had decided this issue, contestants served motion for a new trial on the issues submitted to the jury. The court refused to pass on the motion. Thereafter it made findings that the will had been duly executed, incorporated the answers made by the jury in its findings, and affirmed the order of the probate court admitting the will to probate. Thereupon contestants served notice of motion for a new trial as to all the issues. The motion was denied, and contestants appeal.

■ The first question raised by contestants involves the propriety of the court's refusal to entertain the motion for new trial on the issues submitted to the jury. They contend the court erred in refusing to entertain their motion before deciding the reserved issue. There can be no question but that the defeated party may apply for a new trial of issues submitted to a jury in an equitable action without waiting for findings by the court upon the remaining issue where the verdict is decisive of the case. Buzalsky v. Buzalsky, 108 Minn. 422, 122 N. W. 322. Here, however, the answers of the jury to the specific questions submitted to them were not decisive of the case, since the court had reserved for its determination the issue of due execution of the will. The general rule is that, where only part of the issues are submitted to and determined by a jury, proceedings for a new trial taken before there is a finding upon or decision by the court of the remaining issues are premature, unless the verdict of the jury upon the issues submitted to them completely disposes of the case adversely to the party applying for a new trial. 46 C. J., New Trial, § 259. The court was clearly right in refusing to entertain contestants' motion for a new trial until after it had disposed of the remaining issue in the case. After the findings had been made, contestants made a motion for new trial on all the issues. So, in any case, contestants

were not prejudiced by the court's refusal to hear the motion for a new trial made before the court had decided the reserved issue.

■ Contestants question the sufficiency of the evidence to sustain the verdict of the jury finding that decedent was mentally competent to make a will and that it was not procured by undue influence. It seems unnecessary to detail the evidence on these issues. We have gone over the record carefully, and we conclude that the verdict is amply supported by the evidence. The special interrogatories were submitted under a charge which had the approval of all counsel before it was given. In fact, the evidence is so strong in support of the findings of the jury that contrary answers probably could not have been sustained. This is especially true of the answer determining testator's mental competency.

■ Dr. M. R. Williams had been decedent's physician during his last illness and for several years prior thereto. He was called as a witness for proponent. Contestants unsuccessfully objected to this testimony on the ground that it was privileged, and now claim that the court erred in overruling their objection. It is the rule in this state that the privilege attaching to testimony of a testator's physician may be waived by the executor or executrix named in the will. In passing on this question, this court, in Olson v. Court of Honor, 100 Minn. 117, 122-124, 110 N. W. 374, 377, 8 L.R.A.(N.S.) 521, 117 A. S. R. 676, 10 Ann. Cas. 622, said:

"There was sufficient evidence, if competent, to sustain a finding by the jury that she was under treatment for insanity at the time of her death. Her attending physician was called as a witness and testified to that effect. But the evidence was received over the objection of the defendant that the testimony of the physician was prohibited by G. S. 1894, § 5662, subd. 4, which provides that:

"A regular physician or surgeon cannot, without the consent of his patient, be examined, in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. See R. L. 1905, § 4660, subd. 4.

"If this objection was well taken, the evidence was not competent. It is manifest that the purpose of the statute is to protect the patient, and not his adversary; for the evidence may be received with the consent of the patient.

"Does this privilege become absolute on the death of the patient, or may those who represent him or claim an interest under him after death waive the privilege for the protection of such interest? This is an important question; for if they cannot waive the privilege given by the statute, and their adversary may invoke it to suppress the truth and defeat the enforcement of rights the deceased provided for them in his lifetime, then the statute may be made an instrument for cheating justice. If such be the proper construction of the statute, then, if an executor or legatee presents a will for probate, which is contested on the ground that the testator was of unsound mind when the will was made, the executor or legatee may not, if the contestant objects, call the physician who was attending the testator at the time to testify as to his knowledge of the patient's mental condition, acquired in attending him. * * *

"* * * It cannot be that such is the proper construction of the statute, for it is unreasonable and unjust."

Contestants contend, however, that since the time of the Olson case the statute has been amended in such a manner as to make that case of no value as an authority. The amendment referred to concerns claims for insurance only and has no bearing on a situation such as we have here.

■ Several lay witnesses were called by proponent to testify as to the mental competency of testator. Their testimony was received, and contestants claim that the court erred in permitting them to testify without laying a sufficient foundation and that the form of the questions was improper. The foundation for opinion evidence is a matter within the discretion of the trial court, and an examination of the foundation testimony as to each of the witnesses here indicates that the court did not abuse its discretion. In 2 Dunnell, Dig. & Supp. § 3312, it is stated:

"* * * The supreme court of this state has adopted the view that the rule excluding opinion evidence should be limited to cases where, in the judgment of the trial court such evidence would not be helpful to the jury. The present rule in this state is that the admission of opinion evidence rests largely in the discretion of the trial court."

And in § 3316 it is said:

"* * * Whether a sufficient foundation has been laid for admitting the opinion of a non-expert witness as to mental competency is for the trial court to determine in the exercise of a reasonable judicial discretion," citing cases.

Examination of the testimony discloses no abuse of discretion in the holding of the court that sufficient foundation had been laid. The form of some of the questions which the court permitted to be answered was improper, but in our view of all the evidence on the question of testator's mental competency a verdict holding testator mentally incompetent probably would not be permitted to stand. We see no prejudicial error.

■ The attorney who tried the case for proponent drew the will and testified as to its execution and also as to mental capacity and lack of undue influence. Contestants insist that the court committed reversible error in permitting him to act in the double capacity of witness and attorney. Counsel had drawn the will and witnessed it. When the will was attacked, it was his duty to take the witness stand to sustain it. In In re Estate of Marsden, 217 Minn. 1, 13, 13 N. W. (2d) 765, 772, where the execution of the will was challenged and the attorneys who drew it and witnessed it did not take the witness stand, but tried the case for proponent, this court said:

"* * * We feel that they would have better served the interests of testatrix, who employed them, by becoming witnesses instead of attorneys for proponent. * * * However, not having taken the stand, their conduct is not subject to the censure meted out in In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90, to an

attorney who assumed the dual role of witness and attorney and gave the controlling testimony in support of a will."

This court has in several instances called attention to the impropriety of counsel's becoming a witness for his client in a case which he is trying. Peoples State Bank v. Drake-Ballard Co. 164 Minn. 175, 184, 205 N. W. 59, 62; Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829; In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90, *supra*.

In strong language counsel have been admonished against this impropriety. In this case, as in the Stephens case, counsel knew when contestants filed their objections to the admission of the will that he would be required to take the witness stand. Yet he proceeded to act in this dual capacity. Contestants made no objection to counsel's trying the case until after they had received an adverse decision. Having voluntarily permitted Mr. Pye to proceed as trial counsel knowing that he was a witness to the will, and having made no objection to his continuing the examination of witnesses, or to his arguing the case to the jury after he had actually assumed the additional role of witness, contestants are now in no position to complain.

In Kausgaard v. Endres, 126 Neb. 129, 252 N. W. 810, objection to counsel's participation in the trial after he had testified was promptly made, and it was held that such participation, including the making of an argument to the jury, constituted misconduct requiring a new trial. But no such objection was made in the trial of the instant case. Instead, contestants chose to permit opposing counsel to continue in the role of attorney after he had testified. They should, with the possible advantages of such choice, suffer the disadvantages also and should not be heard to complain now that the jury's adverse verdict has been returned. If that were permissible, any litigant might encourage opposing counsel to take the witness stand against him and make no objection to his continuing as attorney in the case, all with the idea that the jury might nevertheless find for him, and, if it did not, he would lose nothing, because he could always have a new trial. Having im-

pliedly consented to Mr. Pye's continuing as attorney after he had testified, contestants should not be permitted to complain of his conduct for the first time upon motion for a new trial or upon appeal.

Order affirmed.