## HERMAN SCHWANTZ v. LOUISE KLEIBER.[1]

### January 3, 1919.

### No. 20,991.

**New trial — newly discovered evidence — discretion of court.**

1. There was no abuse of discretion in refusing to grant a new trial on the ground of surprise, or of newly discovered evidence.

**Witness — conversation with deceased person — waiver of right to exclude.**

2. Where a party who has the right to exclude a conversation with a deceased person, on cross-examination elicits conclusions and deductions drawn from such conversation, he waives his right, and the other party may give the conversation.

**Same — same — when admissible.**

3. A witness who disposed of all interest in the property in controversy before suit was brought, and who will not be affected by the outcome, may give testimony of conversations with a deceased person.

**Evidence of conceded fact excluded.**

4. Evidence offered to prove a conceded fact may be excluded.

**Chattel mortgage — evidence insufficient to sustain verdict.**

5. The jury returned a verdict for defendant under an instruction directing them to do so if they found that none of the property in controversy belonged to the mortgagor when the mortgage was given, or that the mortgage debt had been paid. As the evidence is not sufficient to sustain the verdict on either of these grounds, it cannot stand.

Action in replevin in the district court for Olmsted county or in case the property could not be returned for $500, its value, and $50 damages for its detention. The case was tried before Callaghan, J., and a jury which returned a verdict in favor of defendant. Plaintiff's motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Fraser & Fraser,* for appellant.

*James A. Carley,* for respondent.

[1] Reported in 170 N. W. 210.

TAYLOR, C.

Suit in replevin. The sheriff took the property under the writ, but left it in the possession of defendant and took her receipt for it. At the trial, plaintiff sought to prove title to the property under chattel mortgages given by David Kleiber, husband of defendant, who had died before the suit was brought. Defendant sought to prove that the mortgage debt had been paid, and also that the property did not belong to David Kleiber when he mortgaged it, but to their children who had turned it over to her after his death. The jury returned a verdict for defendant. Plaintiff made a motion for a new trial which was denied, and thereafter appealed from the judgment in favor of defendant.

Plaintiff presents seven assignments of error.

The first and second assert error in refusing to grant a new trial on the ground of newly discovered evidence, and on the ground of surprise. The record fails to bear out the claim that the new evidence was newly discovered, but on the contrary shows that it was known to plaintiff long before the trial. The surprise of which plaintiff complains seems to rest on the fact that defendant claimed that an indorsement of payment, admitted to have been made by plaintiff on a note in his possession executed by the mortgagor, should outweigh plaintiff's testimony that he had not received such payment, and not on the fact that unexpected evidence had been presented on the part of defendant. Granting a new trial on the ground of newly discovered evidence, or on the ground of surprise, rests so largely in the discretion of the trial court that this court interferes only when a manifest abuse of such discretion is shown. The facts here disclosed will not justify the intervention of this court on either ground. See cases cited in 2 Dunnell, Minn. Dig. §§ 7118, 7120, 7122, 7125, 7127, 7128.

The third assignment raises the question as to whether defendant, in her cross-examination of plaintiff, elicited part of a conversation between plaintiff and David Kleiber, the deceased mortgagor, or conclusions drawn therefrom, and thereby gave plaintiff the right to give the conversation in full.

The statute provides that: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of,

a deceased or insane party or person relative to any matter at issue between the parties."[1] The statute cannot be evaded by giving conclusions or inferences drawn from such conversation. In Madson v. Madson, 69 Minn. 37, 71 N. W. 824, in which a party had been permitted to testify as to the price and terms of payment under an oral contract of sale, the court said: "They could not make an oral contract for the sale of real estate, fix on the price, terms of payment and time for the making and delivery of the deed, without talking. To permit the interested survivor to state the conclusions reached by the parties is far more dangerous and objectionable than would be the conversation in detail leaving the court to draw its own conclusions of fact therefrom. That the statute cannot thus be indirectly nullified has already been decided by this court." The following are to the same effect: Babcock v. Murray, 69 Minn. 199, 71 N. W. 913; Robbins v. Legg, 80 Minn. 419, 83 N. W. 379; Merhoff v. Merhoff, 84 Minn. 263, 87 N. W. 781; Reeves v. Sawyer, 88 Minn. 218, 92 N. W. 962; Veum v. Sheeran, 88 Minn. 257, 92 N. W. 965; Pitzl v. Winter, 96 Minn. 499, 105 N. W. 673, 5 L.R.A.(N.S.) 1009; Larson v. Lund, 109 Minn. 372, 123 N. W. 1070; Theodore Wetmore & Co. v. Thurman, 121 Minn. 352, 141 N. W. 481. As said in Moe v. Paulson, 128 Minn. 277, 150 N. W. 914: "The statute is not an absolute prohibition of such evidence, and the right to exclude it when offered may be waived. The right to exclude it is waived when the party entitled to object to its reception, by cross-examination, requires the prohibited witness to state the conversation or a part thereof." The right to exclude the conversation is also waived, if the party requires the witness to state conclusions or deductions from it. If he himself disregards the statute, he cannot enforce it against his opponent as to that particular conversation.

To understand plaintiff's contention, it is necessary to explain the situation somewhat. David Kleiber had given a promissory note to Gus Warner which had been paid and returned to him. After he had been sued by some of his creditors, David Kleiber induced Gus Warner to indorse this note, and then, with Gus Warner's consent, delivered it to plaintiff, seemingly thinking that its apparent existence as a subsisting

[1][G. S. 1913, § 8378]

obligation in plaintiff's hands would be of benefit to him in dealing with the creditors who had brought suit. This note bore the following indorsement: "Febur. 18-1913, by one horse at $165.00." David Kleiber was indebted to Herman Warner, a son of Gus Warner, in the sum of $600 on an unsecured promissory note which Herman Warner had placed in plaintiff's hands for collection. In an effort to prove that the indorsement on the Gus Warner note evidenced a payment to plaintiff on his mortgage debt, defendant drew out from plaintiff on cross-examination that Herman Warner had purchased the horse from David Kleiber for $165; that plaintiff was present for the purpose of releasing his claim to the horse on the supposition, apparently erroneous, that it was included in his chattel mortgage, and that he made the indorsement on the Gus Warner note, instead of on the Herman Warner note, at the direction of Kleiber. On redirect examination, plaintiff claimed the right to give the transaction concerning the horse in full, on the ground that defendant had waived the statute by her cross-examination, but the court took the position that defendant's questions had not called for the conversation and excluded the proffered testimony. In defendant's cross-examination the following occurred:

"Q. How much did that horse bring? A. Why, they agreed on the price for $165 * * * Q. Who did this horse go to? A. Herman Warner. Q. Went to Herman Warner? A. Yes, sir, supposed to go to Herman Warner. Q. The amount in payment was indorsed on the Gus Warner note, why? A. Why, I don't know why they wanted it that way. Q. You did it just as they wanted it done? A. They asked to have it done. Q. Just as they wanted it done? A. That is the orders I got." These questions called for information which plaintiff obtained from Kleiber or from the conversation between Kleiber and Warner and overstepped the bounds fixed by the statute. See cases cited above.

The fourth assignment attacks the ruling which permitted the children of the deceased mortgagor to testify to the conversations and transactions with him under which they claimed to have acquired title to a part of the property in controversy before he mortgaged it. They are not parties to the action, and the question is whether they are "interested in the event thereof." Defendant alleged in her answer that they

were the owners and entitled to the possession of the property, but plaintiff denied this in his reply. They testified that they had turned the property over to the defendant, their mother, before the suit was brought. As they apparently received no consideration for it, this testimony, and the fact that defendant was in possession of the property, indicate that they had given it to her. Under these circumstances it does not clearly appear that they were interested in the property when suit was brought, nor that they will be liable to defendant in case of failure of title and hence no error was made in the ruling. Ikenberry v. New York Life Ins. Co. 127 Minn. 215, 149 N. W. 292.

The fifth assignment attacks the ruling excluding the testimony of the witness Wirtz that David Kleiber had admitted making the mortgage to plaintiff and that it covered this property. As this ruling was based on the ground that the facts sought to be proven had already been established, unless subsequently disproved by defendant, and defendant acquiesced in this position, plaintiff had no cause for complaint.

The sixth assignment is that the verdict resulted partially from passion and prejudice on the part of the jury. We find nothing in the record which will justify us in disturbing the verdict on this ground.

The seventh assignment is that the verdict is not justified by the evidence. The court charged the jury: "If you find that the indebtedness is paid, or that none of the property described in the receipt held by the officer belonged to Mr. Kleiber at the time the mortgage was given, then your verdict would be for the defendant." No objection was made to this charge, and the giving of it is not assigned as error. Consequently the question presented is whether the evidence is sufficient to sustain the verdict on either ground submitted by the court. There was evidence tending to show that a part of the property never belonged to David Kleiber, and that another part of it was transferred by him to his children before he gave the mortgage, but some of it unquestionably belonged to him and was included in the mortgage and in the receipt. The verdict cannot be sustained on the ground that none of the property belonged to the mortgagor when he gave the mortgage. Recognizing this fact, defendant seeks to sustain it on the ground that the mortgage debt had been paid in full.

This defense is not established unless the evidence warranted the jury

in finding that the amounts indorsed on three notes, none of which are described in, or secured by, the mortgage in controversy, were in fact paid on this mortgage debt and should have been applied thereon. The notes and mortgage in controversy bear date November 27, 1913. Plaintiff held a note bearing the date September 20, 1909, executed by David Kleiber and secured by a chattel mortgage, on which a balance of $200 was due when the notes and mortgage of 1912 were executed. In the years 1913, 1914 and 1915, payments of interest amounting to $30, and payments of principal amounting to $180 were indorsed on the note of 1909. Defendant claims that the balance then due on the note of 1909 was included in the notes and mortgage of 1912, and that the above payments should be applied on the notes of 1912. Her conclusion follows if in fact the notes of 1912 included the balance due on the note of 1909. Plaintiff's testimony, which is the only direct evidence on the question, is to the effect that the consideration for the 1912 notes consisted of about $400 then advanced, and a prior indebtedness, and that this prior indebtedness did not include the balance due on the 1909 note. But he was not questioned as to how or when this prior indebtedness was incurred. To support her contention defendant argues that the statement in the mortgage of 1912, that the property therein described was free from all incumbrance, is evidence that the mortgage of 1909 no longer existed. This argument is without force, for the mortgage of 1909 was excluded from the evidence on defendant's objection, and there is no evidence in the case that it covered any property included in the mortgage of 1912. Defendant also argues that, notwithstanding plaintiff's testimony, the jury were warranted in finding that the balance due on the 1909 note was included in the 1912 note, from all the circumstances and the admission that that note included a prior indebtedness the details of which are not explained. Plaintiff retained the 1909 note, and it was prima facie evidence of a subsisting indebtedness. All the indorsements in question were made in the lifetime of David Kleiber. Plaintiff testified that he left his notes in the bank, and that when these payments were made David Kleiber went with him to the bank and saw the indorsements made on the note. None of the officers of the bank who had the custody of the notes were called as witnesses, and this testimony stands uncontradicted. We find no basis in the facts for a find-

141 M.—22.

ing that the balance due on the note of 1909 was included in that of 1912, and the jury should not have been permitted to conjecture that it was included therein.

The second amount which defendant claims should have been applied on the mortgage debt is an indorsement of $76 on a note which plaintiff testified was without consideration and represented no indebtedness. In explanation of this transaction, plaintiff stated in effect that David Kleiber, to protect himself against the creditors who had sued him, executed a note and mortgage in the sum of $800 which he delivered to plaintiff; that they were wholly without consideration; that he, plaintiff, immediately returned the note to Kleiber, but retained the mortgage; that some months later Kleiber, who had the note, asked him to indorse $76 as paid on it, and that he made the indorsement as requested, but received no payment whatever. From these facts and the fact that David Kleiber was dead and his testimony unavailable, the jury might infer that plaintiff had received the amount of the indorsement which he admits making, notwithstanding his claim to the contrary.

The third amount which defendant claims should have been applied on the mortgage debt is an item of $165 for a horse sold by David Kleiber to Herman Warner, and is the transaction referred to under the third assignment of error. It is undisputed that Herman Warner got the horse and that plaintiff did not. Kleiber received credit for it, evidenced by the indorsement, "by one horse at $165.00," made on the Gus Warner note as hereinbefore stated. Did this indorsement on a fictitious note in the hands of plaintiff, taken in connection with all the other circumstances, justify the jury in finding that plaintiff had been paid $165? Plaintiff testified on cross-examination to the effect that the indorsement was made on this note at the direction of Kleiber and Herman Warner. It would perhaps tend to give the note the appearance of a subsisting obligation. The jury were not obliged to believe plaintiff's testimony, but could hardly find that he had received the $165, unless they also found that Herman Warner had paid it. The indorsement indicates that what was received was the horse, not money, and plaintiff did not get the horse. Herman Warner held an unsecured note of $600 against Kleiber, who was in financial difficulties. Unless it be spelled out from this indorsement, there is not a scintilla of evidence that he

gave any new consideration whatever for the horse; and, in view of the usual conduct of unsecured creditors under such circumstances, an inference that he paid for it otherwise than by applying the agreed price on the debt due him, is not warranted without some evidence to that effect other than this indorsement which, although made with his consent, was not against his interest.

We are unable to sustain the judgment for the reasons which we have indicated and it must be and is reversed.

