[No. 28884. Department Two. May 8, 1943.]

JAMES I. MILLER, *Respondent*, v. WILLIAM O'BRIEN, *as Executor, Appellant.*[1]

[1]Reported in 137 P. (2d) 525.

754

*Horrigan & Horrigan,* for appellant.

*Moulton & Powell,* for respondent.

BEALS, J.—For several years prior to September 30, 1939, M. F. O'Brien owned a store building and store fixtures at White Bluffs, Washington. Prior to April, 1937, Mr. O'Brien and the plaintiff in this action, James I. Miller, had, as partners, conducted a grocery business in the building. The partnership was dissolved April 1, 1937, and thereafter plaintiff conducted the grocery business under a written lease from O'Brien ending December 31, 1939, the rental being twenty dollars per month. Plaintiff purchased O'Brien's interest in the stock and good will, paying therefor by a promissory note for one thousand dollars, payable at the rate of thirty dollars per month, secured

by a chattel mortgage on the stock. Some payments were made upon this note.

Plaintiff admits that September 30, 1939, he owed a balance upon the note in the sum of one hundred dollars. At the same time, plaintiff owed debts in the aggregate sum of $2,261.55, in connection with the operation of the grocery business. Plaintiff had few assets outside of the stock of groceries and a few accounts receivable of doubtful value. On the evening of September 30, 1939, plaintiff closed his business, leaving the merchandise on the shelves, where apparently it has since remained.

Mr. O'Brien was advanced in years and, in the fall of 1939, was suffering from a mortal illness. He died in a hospital at Pasco, October 31, 1939. His will was admitted to probate, and the appointment of defendant, William O'Brien, as executor thereof was confirmed.

Plaintiff filed with the executor his claim against the estate for $2,261.55, stating the following:

"That James I. Miller, sole trader doing business as Valley Market, White Bluffs, Washington, was conducting his business there and was indebted on a mortgage to M. F. O'Brien, the decedent. That shortly prior to the death of the decedent he approached the claimant concerning a settlement of the mortgage debt and advised the claimant that he wanted to buy out the claimant's interest in the store, that at said time the decedent and the claimant, for a good and valuable consideration, entered into an oral agreement and understanding as follows:

"(a) That the claimant deliver the immediate possession of the store, furniture, fixtures and equipment to the decedent.

"(b) That in consideration therefor the claimant would deliver to the claimant a satisfaction of the mortgage of the decedent against all of the property of the claimant and would pay the claimant $250.00 in cash and would pay and discharge all claims against the

claimant individually and doing business as Valley Market, which claims are listed as follows:

"[Here follows a list of twenty-seven creditors of plaintiff, with the amounts due each.]

"That the claimant delivered said store, fixtures, furniture and equipment to the decedent but that the decedent has failed, neglected and refused to make payment of the accounts against the claimant and has failed to pay the claimant the sum of $250.00 which is due him, and that this claim is a contingent claim for the payment of the claims charged against the claimant and which the decedent promised and agreed to pay and which claim to that extent may be satisfied by payment directly to the creditors, and is a direct claim against the decedent's estate for the sum of $250.00."

This claim having been rejected, plaintiff instituted this action based thereon, the allegations being practically identical with the statement in the claim above quoted, a copy of which was attached to the complaint. Plaintiff later furnished a bill of particulars, containing, *inter alia,* the following:

"That the decedent and plaintiff entered into the oral contract and agreement, as alleged in paragraph V of plaintiff's complaint, on September 30, 1939, which agreement was then consummated as a result of various conversations between the decedent and plaintiff between September 20th and September 30th, 1939."

Defendant answered, denying the material allegations of plaintiff's complaint, and by way of cross-complaint alleging that under the lease from Mr. O'Brien to plaintiff, the latter was indebted to the estate in the sum of $566.66, and by way of another cross cause of action, based a claim upon plaintiff's note for one thousand dollars, asking judgment for the further sum of $669.35, alleged to be due on the note, also praying for foreclosure of the mortgage securing the note.

The action was tried to the court sitting with a jury.

The court submitted two questions to the jury, which the jury answered as follows:

"Did the decedent, Martin F. O'Brien, agree to pay the claims owing by plaintiff, set out in his claim herein, introduced as Exhibit One? ANSWER: Yes."

"Did the decedent, Martin F. O'Brien, agree to release and satisfy the mortgage of the decedent upon the property of the plaintiff? ANSWER: Yes."

The jury returned two general verdicts as follows:

"We, the Jury, find for the defendant upon the claim of plaintiff set out in his complaint, in which he claims the sum of $250.00."

"We, the Jury, find for the plaintiff on defendant's cross-complaint."

Defendant's motion for a new trial having been denied, the court entered judgment in plaintiff's favor upon plaintiff's claim against the estate, as follows:

"It is hereby ordered, adjudged and decreed that the claim of the plaintiff in the estate of M. F. O'Brien, deceased, be and the same is hereby approved in that specified performance of the contract set forth therein is hereby ordered, and payment of the creditors of James I. Miller, doing business as Valley Market, as follows: [Here are listed claims aggregating $1,687.05] is ordered to be made by the defendant William O'Brien, executor of the estate of M. F. O'Brien, deceased."

The judgment then proceeds to disallow two claims included in plaintiff's claim against the estate, dismissed with prejudice the two causes of action set forth by way of cross-complaints in defendant's answer, and directed the cancellation of plaintiff's note for one thousand dollars, payable to the deceased. From this judgment defendant has appealed.

Error is assigned upon the ruling of the trial court permitting respondent to maintain this action for the benefit of his creditors, and the submission by the trial

court of the questions of fact to be determined to the jury as in an action at law, after the court had ruled that the cause should be considered as an action for specific performance. Error is also assigned upon the submission to the jury of the two interrogatories answered by the jury in its special verdicts above quoted; upon the giving of one instruction by the trial court; and upon the refusal of the trial court to give one instruction requested by appellant. Appellant also complains of the refusal of the trial court to dismiss the action upon the ground that the oral contract relied upon by respondent was void under the statute of frauds; and upon the court's ruling that respondent's testimony as to conversations between himself and the deceased had been rendered admissible because of questions propounded by appellant's counsel to respondent upon the taking of the latter's pre-trial deposition at appellant's instance.

The larger portion of respondent's cause of action consisted of his claim against the estate based upon his alleged agreement with the deceased, whereby the latter agreed to pay respondent's creditors. These creditors severally filed their claims against the O'Brien estate, and appellant contends that, because these claims have been filed, respondent cannot maintain this action for the recovery from the estate of the amount of the claims. The claims were rejected by appellant. Two of the creditors sued the estate, with the result that their actions were dismissed, no recovery being allowed. In the case at bar, the trial court held that these judgments constituted *res judicata* as to the creditors concerned, and their claims were not included among those ordered paid by the judgment appealed from.

Upon the contract which he alleged he made with the deceased, respondent is entitled to wage this action.

The trial court, instead of awarding respondent judgment, directed that appellant pay the claims. Under the circumstances, this was entirely proper. Appellant's contention that only the creditors themselves could sue the estate is without merit.

. In *Corporate Loan & Security Co. v. Flindall,* 124 Wash. 120, 213 Pac. 450, it was held that the filing of a claim with an estate, and its subsequent allowance, did not bar the creditor from later suing on a promissory note given by the administratrix of the estate in her individual capacity, covering the same indebtedness. In the case cited, there were two contracts to pay the same debt. In the case at bar, respondent alleged one contract inuring to the benefit of several parties, respondent and his creditors. The same rule applies in both instances.

Appellant argues that respondent and his other creditors had an opportunity to intervene in the actions brought by the two creditors above referred to. While such intervention might well have been allowed if requested, respondent's rights in this action are not affected by his own failure or by the failure of the other creditors to intervene in the actions referred to.

Prior to the trial, appellant caused respondent's deposition to be taken, and examined respondent at considerable length concerning the subject matter of respondent's action. During the course of the trial, the court directed that the deposition be published, and it was later read into the record. Appellant concedes that this procedure was proper. *American Fruit Growers v. Calvert,* 186 Wash. 29, 56 P. (2d) 1307.

Over appellant's objection, the trial court ruled that, because in the taking of this deposition appellant had propounded to respondent certain questions concerning the transaction between respondent and the deceased, both regarding its terms, form, and conclusions to be

drawn therefrom, appellant had waived the protection of Rem. Rev. Stat., § 1211 [P. C. § 7722], and that respondent was, for this reason, permitted to testify at large concerning conversations and transactions with Mr. O'Brien in connection with the subject matter of respondent's cause of action. *American Fruit Growers v. Calvert, supra.*

The pertinent portion of the section cited, which we have often quoted, reads as follows:

"§ 1211. No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, . . .: Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . . person, . . ."

As stated in the case of *O'Connor v. Slatter,* 46 Wash. 308, 89 Pac. 885:

"No statute exactly like ours has been called to our attention by the parties to this appeal, and upon independent investigation we have been unable to find any using the same language in the same order as ours."

In the course of the taking of respondent's deposition, appellant's counsel asked respondent many questions concerning the business which respondent had been conducting, and which he contended he had sold to Mr. O'Brien. Some of these questions we shall now consider. He asked respondent: "Are you now the owner of the Valley Market?" to which respondent answered, "Well, I would not say that I was, myself. I sold it to Martin O'Brien and he has the keys, so I would say he was the owner." The following then occurred:

"MR. HORRIGAN: Mr. Powell, Mr. Miller is not familiar with the rules of evidence. Some of his answers naturally are going farther than I thought—than my questions go. I think the way I will handle it is to move to strike his answers when he makes an answer of that type.

"MR. POWELL: That is agreeable and the motion to strike the answer will be incorporated in the deposition, assuming that the answer is not responsive to the question.

"MR. HORRIGAN: I move at this time that the last answer of Mr. Miller be stricken as not responsive to the questions propounded by me."

Thereafter, respondent in his answers several times referred to transactions between himself and the deceased, appellant's counsel generally noting objections to the effect that portions of the answers were not responsive to his questions. Respondent's counsel concedes that appellant has all rights preserved to him by the agreement between counsel above set forth, but contends that, by the questions which he propounded to respondent, and some of respondent's answers which were not objectionable as nonresponsive, or not objected to, appellant has waived the bar of the statute.

After the colloquy between counsel above quoted, the following occurred:

"Q. I am going to ask that question again: Are you now the owner of the Valley Market? A. I would not think that I would be. Q. When you were last, what was the last date that you owned the Valley Market? A. According to the agreement, it would be on the 31st day of September, 1939, I believe. Has it been one or two years—the last day of September, 1939, that was the last time I owned it. Q. I am not asking you—If it is true that you sold this market to someone I am not asking you to whom you sold the market, but I do ask where the transaction took place, if it is true that you did sell the market? A. In the store building. Q. You sold it in the store building? A. That is when

the agreement was made, yes. Q. And that was on September 30, 1939? A. Well, O'Brien and I had discussed these things all a couple of days ahead of that. Q. That is not responsive to my question. Do you wish to withdraw that part of your answer? A. What do you mean by not responsive? The agreement was completed on that date but we had discussed it before.

"JOHN HORRIGAN: I move to strike the answer as not being responsive to the questions propounded by me.

"Q. Mr. Miller, when you sold this business, was there anything placed in writing? Anything that would give evidence of the sale? A. No, there was not. Q. No writing was entered into by you when you sold the business? A. The only writing, I would say was pertaining, I would not say that would be in the same, was a list of small items and articles that belonged to me personally that was left in the store."

The subject matter of this action was an alleged sale of the grocery business, or "market," from respondent to the deceased. Appellant did not contend that respondent sold the business to anyone else, but simply denied the sale to Mr. O'Brien.

It is impossible to lay down any fixed rule concerning questions which constitute a waiver of the bar of the statute and those which do not have that effect. In his questions, appellant's counsel assumed that respondent contended that he had sold the business to "someone," and that someone could only have been Mr. O'Brien. The questions were not limited strictly to respondent's acts. The answers to some of the questions called for respondent's conclusions as to the effect of not only his acts but the acts of another, referred to as "someone." Appellant's counsel asked respondent:

"Q. When you discussed this sale of this business, as you stated you did, was there anybody else present besides yourself and the person with whom you discussed it? A. The wife was in and out of the store— she was there—she was around. Q. No one else? A. Not when we was making the deal. Q. If, as you

allege, there was a sale made and consummated, who was present besides yourself and the person to whom it may be alleged that you sold the business to? A. My wife was the only one that was there at the time, and she was not there all the time. Q. You think she heard part of it? A. Probably."

Later, the following occurred:

"Q. Now, Mr. Miller, on September 30, 1939, what was the value in your opinion of the stock and fixtures, if any, of the Valley Market, excluding those which you claim as your own personal property, or retained from any sale that might have been made—by your own best judgment? A. The value of the business, the business, the stock and all you mean? Q. Yes, you might say, if there was any good will to the business, too. A. Understand our agreement was not based on that at all. Q. Aside from that—it may not be pertinent, I just want to know your best judgment as to the goods, stock, good will—. A. That could run up to $3000.00 or $4000.00 on the valuation there."

Referring to accounts receivable at the time of the alleged sale, we find the following:

"Q. Did you claim to own those accounts? A. Yes. Q. When you alleged that you sold the Valley Market, did you sell the accounts, too? A. Yes. Q. Well, you sold the accounts and now you own them. When did you re-acquire them? A. Mr. O'Brien gave them back to me when he went to the hospital on one of those trips. He had been down here before, I do not know just when it was.

"Mr. Horrigan: I will have to move that that answer be stricken as not responsive to my question.

"Q. I will ask you Mr. Miller, without naming any names, about when you reacquired the accounts—approximately what month and year will be enough, if you can. Q. It was less than thirty days after the store was closed. Just shortly afterwards."

And again:

"Q. When you sold, as you alleged on September 30, 1939, you did not sell any fixtures of any great value,

it was principally merchandise and accounts? A. Yes. Did not sell any fixtures, any of my stuff. Q. Just merchandise and accounts? A. Yes."

In support of his argument that, by what transpired in the course of the taking of the deposition, the bar of the statute was not waived, appellant cites several of our decisions.

In the case of *Ah How v. Furth*, 13 Wash. 550, 43 Pac. 639, the plaintiff testified that between certain dates he worked at the home of the defendant's intestate, and an account book kept by plaintiff, presumably showing the time he worked, was admitted in evidence. On appeal this court held that the evidence was admissible, the evidence not relating to any transaction with the deceased or to any statement made by the deceased.

In the case of *O'Connor v. Slatter*, 48 Wash. 493, 93 Pac. 1078, the plaintiff in an action against an executrix was asked whether or not the defendant, who was the widow of the man whose contract was in issue, was present at the time of the transaction which was the subject matter of plaintiff's cause of action. The executrix had testified that she was not present. This court held that the testimony was not within the bar of the statute, and this ruling was clearly correct. The case is not here in point.

In the case of *Sanborn v. Dentler*, 97 Wash. 149, 166 Pac. 62, 6 A. L. R. 749, an action by a physician to recover against a guardian for services rendered one who was adjudged insane after the services were rendered, it was held that entries in the physician's account book were competent evidence. Under the case of *Ah How v. Furth, supra*, this ruling was clearly correct. The physician, testifying by deposition in another state, was also asked for what purpose the patient called at his office, to which the witness replied, "To get me to

examine him and prescribe for him." The witness was then asked whether he made an entry of a charge for the services in his account book, to which he answered in the affirmative. Concerning this evidence, the court said:

"This is the most nearly objectionable of any of the testimony of the respondent by deposition that was admitted by the court. This ruling was made by the court just prior to his ruling that nothing could be read and considered by the jury except the entries from the book testified to by the respondent. In view of this, we do not think it material, or that it probably influenced or prejudiced the jury in any way as evidence which they considered which was incompetent."

Apparently, in view of all the circumstances, this court considered that any error committed by the trial court in admitting the statement of the witness was error without prejudice. It would seem that the question propounded to the doctor as to the purposes of the consultation sought by Mr. Woodman, the incompetent defendant in the action, concerned a transaction with the patient. The view expressed in the opinion that in any event the evidence was not prejudicial, deprives the case of authority as to this particular question.

Appellant strongly relies upon the case of *Conner v. Hodgdon*, 120 Wash. 426, 207 Pac. 675, an action by the administratrix against an attorney who had represented her intestate husband, the plaintiff asking for a decree declaring the defendant to hold a tract of real estate as trustee for the estate. The defendant claimed to own the property. The plaintiff called the defendant as a witness, and, on cross-examination by his own counsel, the court refused to permit the witness to testify as to statements made to him by the deceased. The defendant then made an offer of proof to the effect that he had discussed with his late client the matter which resulted in the pending litigation, and contended

on appeal that the court erred in excluding his testimony because of questions which had been propounded to the defendant on his examination in chief by plaintiff's counsel. It is stated in the opinion that, on the defendant's examination in chief, plaintiff's counsel had asked him what he had done, but had not examined him as to any transaction had by him with, or any statement made to him by, the deceased. It was held that the rulings of the trial court were correct. The case was heard by this court *En Banc,* two judges concurring with the writer of the opinion, and three more concurring with the majority, but adding a statement which has no bearing upon the question now under discussion. Judge Fullerton filed a dissenting opinion, and one judge concurred with him. Appellant relies upon the dissenting opinion rather than upon the opinion of the court, and goes even beyond that, quoting from the briefs in the case. The dissenting opinion is, of course, not authority, and, in fact, does not fully support appellant's contention.

In this connection, appellant cites authorities from other states, which, while bearing upon the question at issue, are not controlling, and, in view of our peculiar statute which, as we have noted, seems to be unique, need not be discussed.

Cases holding that an executor, without waiving the bar of the statute, may examine a witness for the purpose of determining whether the witness is a party in interest and for this reason within the statute, are not in point. Here respondent was the plaintiff in the action.

That the bar of the statute may be waived has several times been decided by this court. *Levy v. Simon,* 119 Wash. 179, 205 Pac. 426; *Johnson v. Clark,* 120 Wash. 25, 206 Pac. 914; *Floe v. Anderson,* 124 Wash. 438, 214 Pac. 827; *Gregory v. Peabody,* 157 Wash. 674, 290 Pac.

232; *Johnston v. Medina Improvement Club,* 10 Wn. (2d) 44, 116 P. (2d) 272.

In the case of *Robertson v. O'Neill,* 67 Wash. 121, 120 Pac. 884, an action against an administrator, the plaintiff was permitted to testify that the deceased had checked over the plaintiff's account, and expressed approval thereof. After reserving an exception to this testimony, defendant's counsel on cross-examination interrogated the plaintiff concerning certain items in the account, and caused him to identify and explain certain checks of the deceased drawn to plaintiff's order. It was held that, while the testimony given in chief by the witness above described was clearly incompetent under § 1211, the error had been waived by the later cross-examination of the plaintiff by defendant's counsel.

Appellant argues that the authority of this case has been weakened by the opinion in *Conner v. Hodgdon, supra.* In support of this argument, appellant again cites the dissenting opinion in the case last cited. It is true that in his dissent Judge Fullerton stated that, as he construed the opinion of the majority, the same was contrary to the holding in the *Robertson* case. Apparently the majority did not agree with this view, as the latter case is not even referred to in the opinion of the court, in which the facts of the case are so stated as to render the *Robertson* case inapposite.

In the case of *Schwantz v. Kleiber,* 141 Minn. 332, 170 N. W. 210, the supreme court of Minnesota, in considering the question of waiver of the bar of a somewhat similar statute, it appearing that the defendant, who was entitled to rely upon the statute, had on cross-examination of the plaintiff elicited part of a conversation between the plaintiff and the deceased mortgagor, "or conclusions drawn therefrom," held that the bar of the statute had been waived. In the course of the opinion, the court said:

"The statute cannot be evaded by giving conclusions or inferences drawn from such conversation. In *Madson v. Madson,* 69 Minn. 37, 71 N. W. 824, in which a party had been permitted to testify as to the price and terms of payment under an oral contract of sale, the court said: 'They could not make an oral contract for the sale of real estate, fix on the price, terms of payment and time for the making and delivery of the deed, without talking. To permit the interested survivor to state the conclusions reached by the parties is far more dangerous and objectionable than would be the conversation in detail leaving the court to draw its own conclusions of fact therefrom. That the statute cannot thus be indirectly nullified has already been decided by this court.' "

We have discussed this phase of the case at length, because of the importance of the question in the case at bar, and because appellant's arguments suggest that some of our prior decisions should be discussed.

The trial court correctly held that, by the examination of respondent by appellant's counsel when respondent was testifying by deposition (excluding from consideration such of respondent's answers as should be deemed unresponsive), the bar of the statute was waived, and, upon the trial of the action, respondent was correctly permitted to testify in detail as to conversations and transactions between himself and the deceased, concerning the issues to be determined.

█ Appellant argues that, because of certain sections of the statute of frauds, respondent's action may not be maintained, contending, *inter alia,* that, according to respondent's complaint, Mr. O'Brien's agreement amounted to a "special promise to answer for the debt, default or misdoings of any person." Rem. Rev. Stat., § 5825 [P. C. § 7745] (2).

In the case of *Don Yook v. Washington Mill Co.,* 16 Wash. 459, 47 Pac. 964, it was held, in connection with a sale of logs by B to the defendant, that the contract

of the defendant to pay the debt which B owed to the plaintiff as part of the consideration for the logs was not within the statute of frauds, the agreement to pay the plaintiff being an original promise.

The cases of *Gilmore v. Skookum Box Factory*, 20 Wash. 703, 56 Pac. 934, and *Dimmick v. Collins*, 24 Wash. 78, 63 Pac. 1101, are to the same effect.

■ ■ Appellant also relies upon Rem. Rev. Stat., § 5836-4 [P. C. § 6227-4], the first and third paragraphs of which read as follows:

"(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. . . .

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

Respondent in his complaint alleged an oral contract with Mr. O'Brien. He reiterated this in a bill of particulars which he furnished, in which he stated that the agreement was consummated. The transcript discloses no demurrer to the complaint, but contains appellant's answer merely denying the agreement. It does not appear that by his pleadings appellant interposed the bar of the statute of frauds. If relied upon in this connection, the statute should have been pleaded. *Moses Land etc. Co. v. Stack-Gibbs Lbr. Co.*, 56 Wash. 529, 106 Pac. 207; *Goodrich v. Rogers*, 75 Wash. 212, 134 Pac. 947.

In any event, the record contains evidence which, if believed by the trier of the fact, supports a finding that the sale of the stock of merchandise was fully consummated by delivery to Mr. O'Brien at the time of the agreement.

█ Appellant assigns error upon the giving of one instruction and upon the refusal of the trial court to give another instruction which appellant requested. As neither the instruction given nor the one requested is printed in appellant's brief, this assignment of error cannot be considered.

Upon the close of the trial, and after the trial court had announced its decision, appellant filed a motion for a new trial, which, after argument, was denied by a written order. On this appeal, appellant has not assigned error upon the denial of this motion. Upon the record and appellant's assignments of error, no detailed consideration of the evidence in the case is necessary.

█ Respondent based his complaint in this action upon an alleged contract for the sale of merchandise, stating a case at law for the recovery of money only. He did, however, directly allege that, as part of the consideration for the transfer of the merchandise, Mr. O'Brien agreed to release and satisfy the mortgage owned by him, covering respondent's property.

Appellant in his answer cross-complained against respondent, asking for judgment for a certain amount due upon the note secured by this mortgage, also praying for foreclosure of the mortgage. It thus appears that, by the allegations of respondent's complaint, the mortgage foreclosure sought by appellant was a part of the transaction which was the subject matter of respondent's action. If the trier of the fact should determine that appellant was entitled to foreclose the mortgage, then respondent's cause of action, at least *pro tanto*, failed.

It would seem, then, that by appellant's cross-complaint for foreclosure, asking affirmative relief in connection with the cause of action set forth in respondent's complaint, the action was changed from one at law to a cause equitable in its nature. When the trial was about half completed, the trial court, in the course of a colloquy between court and counsel, stated that he intended to consider the action as in the nature of one for specific performance. This, of course, would also be an equitable proceeding. A jury had been impaneled, and it was entirely proper for the court to continue the jury and submit certain questions of fact for findings, but the action having become one in equity, the jury's findings would be advisory only.

Upon the question of the change of an action from one at law to one in equity by facts alleged in the defendant's answer, the following decisions of this court are in point: *Peterson v. Philadelphia Mortgage & Trust Co.*, 33 Wash. 464, 74 Pac. 585; *Nolan v. Pacific Warehouse Co.*, 67 Wash. 173, 121 Pac. 451, Ann. Cas. 1913D, 167; *Thiel v. Miller*, 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523; *Millett v. Pacific Cider & Vinegar Co.*, 151 Wash. 561, 276 Pac. 863; *Vickerman v. Kapp*, 167 Wash. 464, 9 P. (2d) 793.

Under instructions which, upon the record before us, it must be assumed were adequate and correct, verdicts were returned by the jury, as above stated. The trial court was entitled to consider these verdicts as advisory, and give to the jury's findings such weight as seemed proper, but these verdicts were not entitled to the same weight as are verdicts in law actions.

In passing upon appellant's motion for a new trial, the court filed a written memorandum decision, which is before us as part of the statement of facts. The last paragraph of this memorandum opinion reads as follows:

"With Miller's testimony in the record, that and other testimony furnished evidence upon which the jury could say that a sale had been made and the goods sold turned over to the purchaser pursuant thereto. The issues as presented to the jury were involved and I had much concern at the time as to whether the lay mind of the jurors would understand. The verdicts returned show their full understanding thereof. Regardless of the court's personal opinion, there was evidence to support each verdict returned by the jury."

From this statement it appears that the trial court did not consider the jury's verdicts as advisory only, but carried the verdicts into effect by the judgment which it entered, "regardless of the court's personal opinion." In this the trial court erred.

In the case of *Hodgen v. Department of Labor & Industries,* 194 Wash. 541, 78 P. (2d) 949, this court reversed a judgment entered by the superior court in favor of the plaintiff, holding that in such a case the jury might

". . . aid the court in passing on questions of fact, but its verdict is nevertheless advisory only and may be accepted or rejected by the court after mature consideration of all the evidence in the case."

In the case cited, we called attention to the fact that the situation was practically the same as in equity cases, wherein the verdict of the jury is merely advisory to the court. The judgment appealed from was reversed, and the cause remanded for further consideration.

In the case of *In re Jolly's Estate,* 197 Wash. 349, 85 P. (2d) 267, it appeared that the trial court had accorded to the verdict of the jury more weight than it was entitled to in such cases. This court did not remand the case for further proceedings, but reversed the order appealed from.

This question was discussed in the case of *Goodwin*

*v. Gillingham,* 10 Wn. (2d) 656, 117 P. (2d) 959, in which we said:

"In the very nature of things, a judge cannot delegate his chancery powers to a jury under any imaginable circumstances. We have carefully considered whether or not it can be deemed to appear from the record that what the trial judge actually did was to send certain questions of fact to the jury for determination, retaining certain equitable questions for his own decision. But we have been unable to find any indication therein that this was done."

Both upon the pleadings and upon the theory adopted by the trial court, the action was equitable in its nature. The judgment entered is in form one decreeing specific performance. The court, then, should have decided the cause, considering the jury's verdicts as advisory only. In the case at bar, the trial court is in a very much better position than are we to decide the case on the facts. This is peculiarly a fact case, depending largely on the testimony of respondent. The trial court heard his testimony and observed his demeanor on the witness stand. In the absence of any compelling reason for doing so, we are not disposed to undertake the burden of weighing the evidence.

In his brief, respondent states the rule that in an equitable action the trial court may, at discretion, call a jury. This is, of course, true, but, in the case at bar, it appears beyond question that the trial court did not consider the jury's findings as advisory only.

Appellant entitled his motion for new trial "Motion for judgment for the defendant notwithstanding the verdict of the jury, or in the alternative for a new trial," and respondent argues that, by this motion as entitled, appellant submitted the entire matter for the court's decision. The motion, however, while entitled as above set forth, is in effect a motion for a new trial,

and was evidently so considered by the trial court, as the order denying the motion reads as follows:

"This matter having come on regularly in its order to be heard on motion of the defendant for a new trial, the court having listened to argument of counsel and having taken the matter under advisement for consideration, and being duly advised, and having heretofore filed his memorandum of opinion herein on said motion,

"Now, THEREFORE, IT IS HEREBY ORDERED that the motion for new trial of the defendant be and the same is hereby denied."

In any event, such a motion could not be held to constitute a waiver of the trial court's error in considering the jury's verdicts binding upon the court as to disputed questions of fact.

Upon the record before us, we find no trial error.

For the reason stated, the judgment appealed from is vacated, and the cause remanded to the superior court, with directions to pass upon the evidence, treating the jury's verdicts as advisory, and to enter a decree as in an equitable action.

SIMPSON, C. J., ROBINSON, BLAKE, and GRADY, JJ., concur.